719 F.2d 1426
 33 Fair Empl.Prac.Cas. 461,
32 Empl. Prac. Dec. P 33,913
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
CHILDREN'S HOSPITAL MEDICAL CENTER OF NORTHERN CALIFORNIA,
Defendant-Appellee.
 No. 80-4572.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted En Banc July 11, 1983.
Decided Nov. 8, 1983.
 
 Vincent Blackwood, EEOC, Washington, D.C., for plaintiff-appellant.
 Kent Jonas, Corbett, Kane & Berk, San Francisco, Cal., for defendant-appellee.
 On Appeal from the United States District Court for the Northern District of California.
 Before BROWNING, Chief Judge, CHOY, GOODWIN, ANDERSON, TANG, SCHROEDER, FLETCHER, NELSON, CANBY, NORRIS and REINHARDT, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 The Equal Employment Opportunity Commission ("EEOC" or "Commission") seeks enforcement of subpoenas issued to aid its investigation of Children's Hospital Medical Center ("CHMC" or "Hospital"). The district court refused enforcement, finding that its prior consent decree stripped the EEOC of its jurisdiction to investigate. We reverse.
 
 I. BACKGROUND
 
 2
 In 1974, a private class action was instituted against CHMC, alleging race discrimination in violation of Title VII, 42 U.S.C. Sec. 2000e et seq. The class was certified under Fed.R.Civ.P. 23(b)(2) as past, present and future black employees and applicants for employment. The EEOC was not a party to any proceedings in the lawsuit.
 
 
 3
 In late 1976, prior to trial, the parties proposed and the court approved a consent decree. The decree enjoins discrimination against class members, establishes affirmative action goals, and creates an internal grievance procedure to resolve any alleged violations of the decree. The decree is effective until 1984.
 
 
 4
 In August and September of 1979, three black employees filed charges with the EEOC alleging racial discrimination in suspensions, layoffs, promotions and other terms of employment. As part of its investigation of the charges, the EEOC requested information on the charging parties from the Hospital. The Hospital refused, claiming that the EEOC lacked jurisdiction because the charging parties were limited to the grievance remedy provided by the consent decree.
 
 
 5
 In November of 1979, the EEOC district director issued three subpoenas to secure this and other information. Both the district director and the full Commission denied CHMC's petitions to revoke the subpoenas. The Hospital continued to refuse compliance and the EEOC sought enforcement in the district court. On September 26, 1980, Judge Orrick, who had entered the consent decree and was supervising its enforcement, refused to enforce the subpoenas, finding the EEOC lacked jurisdiction over the charges because the charging parties and their claims were subject to the decree.
 
 II. ANALYSIS
 
 6
 On appeal, the parties have focused primarily on the res judicata effect of the consent decree on claims arising after entry of the decree. To be sure, that presents an important, and, we admit, difficult question which is worthy of serious consideration. That time is not yet upon us, however, for there is a preliminary question concerning the EEOC's authority to investigate which is dispositive of this appeal. The sound policies dictating against advisory opinions require us to leave the res judicata question for later, when it is fully developed and ready for judicial determination. See EEOC v. Chrysler Corp., 567 F.2d 754, 755 (8th Cir.1977); see also United States v. Fruehauf, 365 U.S. 146, 157, 81 S.Ct. 547, 553-554, 5 L.Ed.2d 476, 483 (1961); Babbitt v. United Farm Workers, 442 U.S. 289, 304-305, 99 S.Ct. 2301, 2311-2312, 60 L.Ed.2d 895, 910-911 (1979).
 
 
 7
 Our refusal to address the res judicata question is grounded in the scope of the EEOC's authority to investigate charges of discrimination and compelling Supreme Court authority. The district court held that the consent decree stripped the EEOC of its jurisdiction to investigate charges of discrimination at the Hospital. The law governing agency investigations mandates a contrary conclusion. The EEOC clearly has the authority to investigate. If, after conducting its investigation, the Commission brings an action or issues a right-to-sue letter to the charging parties which they pursue, then the question of the preclusive effect of the consent decree can be properly asserted and decided.
 
 
 8
 The scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation. See Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 508-509, 63 S.Ct. 339, 343, 87 L.Ed. 424, 429 (1943); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614, 633 (1946); United States v. Morton Salt Co., 338 U.S. 632, 652-653, 70 S.Ct. 357, 368-369, 94 L.Ed. 401, 416 (1950); United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-255, 13 L.Ed.2d 112, 119 (1964); Pacific Maritime Association v. Quinn, 491 F.2d 1294, 1296 (9th Cir.1974); Federal Maritime Commission v. Port of Seattle, 521 F.2d 431, 434 (9th Cir.1975); Casey v. FTC, 578 F.2d 793, 799 (9th Cir.1978); EEOC v. Dean Witter Co., 643 F.2d 1334, 1338 (9th Cir.1980); see also B. Schlei and P. Grossman, Employment Discrimination Law 956-959 (2d ed. 1983); 1 K. Davis, Administrative Law Treatise Secs. 4:6, 4:15 (2d ed. 1978); 3 B. Mezines, J. Stein and J. Gruff, Administrative Law Sec. 19.02 (1983). If these factors are shown by the agency, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome. Oklahoma Press, 327 U.S. at 217, 66 S.Ct. at 510, 90 L.Ed. at 634; Morton Salt Co., 338 U.S. at 653, 70 S.Ct. at 369, 94 L.Ed. at 416; General Insurance Co. of America v. EEOC, 491 F.2d 133, 136 (9th Cir.1974).
 
 
 9
 There is no question and CHMC does not dispute that the subpoenas at issue here fall within these restrictions. Congress not only has authorized but requires the Commission to investigate charges of discrimination. 42 U.S.C. Sec. 2000e-5(b)[1]. To carry out its investigatory duty, the EEOC has access to "evidence of any person being investigated or proceeded against that relates to unlawful employment practices ... and is relevant to the charge under investigation." 42 U.S.C. Sec. 2000e-8(a). The evidence sought here--the charging parties' personnel files and job descriptions, and lists of other individuals subject to similar disciplinary action by the Hospital--is clearly relevant and material to the charges being investigated. The method used to gather the information by the EEOC--subpoenas--is authorized by 42 U.S.C. Sec. 2000e-9 which gives the EEOC the same investigative powers as those provided the National Labor Relations Board in 29 U.S.C. Sec. 161.
 
 
 10
 CHMC argues, and the district court found, that the EEOC lost its "jurisdiction" to investigate because of the res judicata effect of the 1976 consent decree. But agency jurisdiction is not abrogated because the party being investigated may have a valid defense to a subsequent suit by the agency.[2] In Endicott Johnson Corp., the Supreme Court began to lay the foundation of the law governing agency investigations. In response to the argument that the Secretary of Labor's subpoena was beyond her jurisdiction, the Court found that the question of jurisdiction is, in the first instance, for the agency and not the courts; questions of the coverage of the statute in question and the possible defenses available were to be left for judicial review of whatever administrative action the Secretary ultimately brought. 317 U.S. at 509, 63 S.Ct. at 343, 87 L.Ed. at 429; accord, Oklahoma Press Publishing Co., 327 U.S. at 214, 66 S.Ct. at 508, 90 L.Ed. at 632. When, in the words of the Court, "[t]he evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose" it should have been enforced. Endicott Johnson Corp., 317 U.S. at 509, 63 S.Ct. at 343, 87 L.Ed. at 429.
 
 
 11
 In another important case in this area, Morton Salt Co., the Supreme Court was presented with a claim very similar to the one here. A Federal Trade Commission cease and desist order was enforced by and under the supervision of the Court of Appeals. The order required the filing of compliance reports by Morton Salt. Morton Salt claimed that the FTC could not require additional reporting without proceeding through the court. The Court rejected that argument, placing great emphasis on agency power of "original inquiry."
 
 
 12
 It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.
 
 
 13
 338 U.S. at 642-643, 70 S.Ct. at 364, 94 L.Ed. at 411. The Court went on to note that Congress had authorized the FTC to investigate compliance with court decrees. Id. Congress has provided the EEOC with the same authority: "In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order." 42 U.S.C. Sec. 2000e-5(i); see EEOC v. First Alabama Bank of Montgomery, 595 F.2d 1050, 1054 (5th Cir.1979). If we were to say the consent decree divested the Commission of its power to investigate, this provision of Title VII would lack any substance. How else but through investigation could the EEOC determine compliance with a court decree?
 
 
 14
 Morton Salt and Sec. 2000e-5(i) ought to be dispositive of this appeal. One may argue, however, that the EEOC's purpose in issuing these subpoenas was not to seek compliance with the consent decree but to compel compliance with its own view of the law. Even if the EEOC's subjective purpose behind the investigation is somehow relevant, the law remains clear that raising the preclusive effect of the consent decree as a defense to the subpoenas is premature.
 
 
 15
 As noted, a party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it. This court has held that it is premature to allow a party being investigated to raise a statute of limitations defense to an EEOC demand for documents; even assuming that the timeliness of a complaint is jurisdictional, we noted that the agency should be allowed to investigate to make the determination whether the violation is continuing in nature, thereby providing it with jurisdiction. Pacific Maritime Association, 491 F.2d at 1296-97; see EEOC v. St. Regis Paper Co., 717 F.2d 1302, at 1303-1304 (9th Cir.1983) (discovery may be obtained only in exceptional cases and counterclaims need not be considered at all). Pacific Maritime has been followed in similar contexts by other courts. EEOC v. South Carolina National Bank, 562 F.2d 329, 332 (4th Cir.1977) (claim that charge was untimely could not be raised as a defense to EEOC investigation); EEOC v. Chrysler Corp., 567 F.2d at 755 (claim that EEOC lacked jurisdiction and counterclaims raised by Chrysler were premature in subpoena enforcement proceeding); EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 309 (7th Cir.1981) (counterclaims could not be raised in enforcement proceeding, they must await the trial on the underlying charges); see EEOC v. K-Mart Corp., 694 F.2d 1055, 1066-67 (6th Cir.1982) (there is no absolute right to discovery by the party being investigated in a subpoena enforcement proceeding); but cf. New Orleans Steamship Ass'n v. EEOC, 680 F.2d 23, 25-26 (5th Cir.1982) (the court assumed that a prior consent decree that bound private plaintiffs might prevent the EEOC from enforcing a subpoena to investigate charges on behalf of those plaintiffs, but found that private plaintiffs were not bound or estopped). Cases discussing the National Labor Relations Board's power of investigation under 29 U.S.C. Sec. 161, which is made expressly applicable to EEOC investigations by 42 U.S.C. Sec. 2000e-9, also preclude raising "defenses" in subpoena enforcement proceedings. Cudahy Packing Co. v. NLRB, 117 F.2d 692, 694 (10th Cir.1941); Hamilton v. NLRB, 177 F.2d 676, 677 (9th Cir.1949); NLRB v. Daniel Construction Co., 418 F.2d 790, 791 (4th Cir.1969), cert. denied, 397 U.S. 1039, 90 S.Ct. 1358, 25 L.Ed.2d 649 (1970); NLRB v. Frederick Cowan and Company, 522 F.2d 26, 28 (2d Cir.1975); NLRB v. Dutch Boy, Inc., Glow Lite Division, 606 F.2d 929, 933 (10th Cir.1979); NLRB v. Interstate Dress Carriers, Inc., 610 F.2d 99, 112 (3d Cir.1979); see NLRB v. International Medication Systems, Ltd., 640 F.2d 1110, 1114 & n. 2 (9th Cir.1981), cert. denied, 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 134 (1982).
 
 
 16
 CHMC's argument that the EEOC lacks the jurisdiction to investigate plainly falls within the prohibition against raising what normally would be a defense to an action by the agency. The Hospital's claim is premised on the preclusive or res judicata effect of the consent decree. But res judicata is an affirmative defense under the rules of civil procedure. Fed.R.Civ.P. 8(c). It is not a jurisdictional doctrine.
 
 
 17
 Even assuming that the consent decree could somehow present a jurisdictional bar to investigation, this court has emphasized the "strictly limited" role of the district court when an agency subpoena is attacked for lack of jurisdiction. Casey v. FTC, 578 F.2d 793, 799 (9th Cir.1978). As long as the evidence sought is relevant, material and there is some "plausible" ground for jurisdiction, id., or, to phrase it another way, unless jurisdiction is "plainly lacking," Marshall v. Burlington Northern, Inc., 595 F.2d 511, 513 (9th Cir.1979), the court should enforce the subpoena. In an area of the law as unsettled as that involving the preclusive effect of class actions on future class claims, we cannot by any means say jurisdiction is plainly lacking.
 
 
 18
 The Hospital does not argue that the evidence sought here is incompetent, irrelevant or sought outside proper agency procedure. The subpoenas must therefore be enforced. After gathering the evidence, the Commission may decide the charges lack reasonable basis and the matter will end if the charging parties do not wish to pursue it. If the Commission finds the charges substantiated, it may be able to secure voluntary compliance with the law by the Hospital. And compliance may merely entail the same course of conduct prescribed by the consent decree. An alternative scenario is a suit by the Commission or the charging parties. If timely raised, the courts will then be properly presented with the question of the preclusive effect of the consent decree.
 
 
 19
 As a matter of policy it may be argued that permitting the EEOC to investigate notwithstanding the consent decree will deter parties in future class actions from settling their cases. Such an argument is unfounded for two reasons. First, if the parties arrive at a sound settlement, the minimal inconvenience of an EEOC investigation of future complaints is unlikely to deter the settlement. Second, if problems arise with the settlement, either in its content or its implementation, the benefit of the EEOC's independent input may advance the purposes of the antidiscrimination laws at little or no cost to the parties.
 
 
 20
 Accordingly, the judgment of the district court is REVERSED and the cause REMANDED to enforce the subpoenas.
 
 
 21
 FLETCHER, Circuit Judge, with whom NELSON and REINHARDT, Circuit Judges, joined, concurring:
 
 
 22
 I concur in the majority opinion, and with that part of Judge Norris's concurring opinion that describes the scope of the EEOC's investigation and enforcement powers. I write separately to express my view that we should also address the issue presented by the parties at every stage of the case: whether plaintiffs as members of the Clayton class are barred by res judicata from seeking new relief for Title VII violations occurring after the date of the consent decree. That issue has been fully briefed and argued, and requires no further factual development for its resolution. Considerations of judicial economy as well as fairness to the parties compel my view that we should not put these litigants in the place of a yo-yo at the end of a string. To this extent I agree with Judge Schroeder's dissent.
 
 
 23
 Rather than awaiting the issue on the next upward rise of the yo-yo, this court should now hold that the consent decree is not a bar to the pursuit by the charging parties of their claims under Title VII. Contrary to the view expressed by Judge Schroeder in her dissent, Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), should cause the court to conclude "that there can be no prospective waiver of an employee's rights under Title VII .... [W]aiver of these rights would defeat the paramount congressional purpose behind Title VII." Id. at 51, 94 S.Ct. at 1021. The gloss of court approval of the parties' contract and the mechanisms for court enforcement present in our case do not alter these principles. Here, as in Gardner-Denver, the remedy provided by the agreement of the parties is in addition to, and not a substitute for, the statutory rights afforded them by law.
 
 
 24
 NORRIS, Circuit Judge, concurring.
 
 
 25
 While I agree with the majority that the EEOC's subpoena must be enforced so long as " '[t]he evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose,' " supra at 1429 (quoting Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943)), I write separately to identify what I perceive to be the "lawful purpose" that underlies the subpoena before us.
 
 
 26
 The Supreme Court has stated that the EEOC "is not merely a proxy for the victims of discrimination," but "acts also to vindicate the public interest in preventing employment discrimination." General Telephone Co. v. EEOC, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980). Based on the EEOC's independent authority to vindicate the public interest, two circuits have held that even where a charging party has executed a binding settlement the EEOC may "use the filing of a charge simply as a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices." EEOC v. Hutting Sash & Door Co., 511 F.2d 453, 455 (5th Cir.1975). See also EEOC v. McLean Trucking Co., 525 F.2d 1007 (6th Cir.1975); EEOC v. Kimberly-Clark Corp., 511 F.2d 1352 (6th Cir.1975), cert. denied, 423 U.S. 944, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975). Thus, the EEOC's investigatory and enforcement powers do not vanish simply because an employee has entered into a settlement to which the EEOC is not a party.
 
 
 27
 Applying these principles to the case at hand, I find that the EEOC's subpoena is generally validated by the agency's authority to vindicate the public interest. More specifically, if the EEOC's investigation uncovers facts that so warrant, the EEOC may bring action under 42 U.S.C. Sec. 2000e-5(i) "to compel compliance" with the Clayton consent decree, apply pursuant to 42 U.S.C. Sec. 2000e-4(g)(6) to intervene in the ongoing Clayton litigation in order to alter the consent decree, or take action under 42 U.S.C. Sec. 2000e-5(b) or (f) to eliminate unlawful employment practices through either conciliation or independent legal action. The EEOC's subpoena is relevant to all of these "lawful purpose[s]" and, consequently, must be enforced.
 
 
 28
 Each course of action is open to the EEOC regardless of whether the Clayton consent decree would bar the charging employees from bringing a private action against Children's Hospital. Consequently, I see no reason to reach that question at this time.
 
 
 29
 SCHROEDER, Circuit Judge, with whom CHOY, Circuit Judge, joins, dissenting.
 
 
 30
 I respectfully dissent from the majority's holding that an EEOC investigation must proceed without regard to whether jurisdictional considerations bar the individual claim being investigated. The EEOC never sought such a holding from this court; the holding is without precedent, and its practical effect may well be to hinder efficient use of the EEOC's meager investigatory resources, as well as to foster futile investigations.
 
 
 31
 I would affirm the district court's decision that the subpoenas are not enforceable so long as a district court judgment in a private class action covers the claims under investigation as well as all similar claims of class members. The EEOC now challenges the validity of that judgment, known as the Clayton decree. While I agree with the implicit majority view that the decree itself should not be attacked in this collateral proceeding, I disagree with its ruling which artificially prolongs the investigatory process.
 
 
 32
 The majority's decision extends the EEOC's investigative powers beyond those authorized by the statute or the case law. Contrary to the majority's premise, significant limits on the agency's investigative powers do exist. For example, EEOC investigations under Title VII are limited to charges of employment discrimination that are properly filed under section 706(b). 42 U.S.C. Sec. 2000e-5(b). The law in this circuit, as well as in the other circuits considering the question, is that the EEOC may not compel enforcement of a subpoena if the requirements of section 706 are not satisfied. EEOC v. Dean Witter Co., Inc., 643 F.2d 1334 (9th Cir.1980). See also EEOC v. K-Mart Corp., 694 F.2d 1055 (6th Cir.1982); Graniteville Co. v. EEOC, 438 F.2d 32 (4th Cir.1971).
 
 
 33
 This court also has refused enforcement of an EEOC subpoena when the charging party had not exhausted available state remedies. EEOC v. Union Bank, 408 F.2d 867 (9th Cir.1968). Union Bank is fully consistent with the Supreme Court's recent ruling in Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), which gave preclusive effect to a prior state court decision in the employee's federal employment discrimination case.
 
 
 34
 In New Orleans Steamship Association v. EEOC, 680 F.2d 23 (5th Cir.1982), the Fifth Circuit recognized, as the majority acknowledges, that res judicata would bar enforcement of EEOC subpoenas relating to claims previously settled in Title VII class litigation. Id. at 25-26. Likewise, cases involving the NLRB, an agency with authority analogous to the EEOC, recognize that the timeliness of an unfair labor practice charge is a jurisdictional defense. See Bruce Duncan Co., Inc. v. NLRB, 590 F.2d 1304 (4th Cir.1979); NLRB v. Inland Empire Meat Co., 611 F.2d 1235 (9th Cir.1979). See also 29 U.S.C. Sec. 160(b). The majority's decision clashes with all of these authorities.
 
 
 35
 This circuit's decision in Pacific Maritime Association v. Quinn, 491 F.2d 1294 (9th Cir.1974), does not support the proposition that a subpoena must be enforced regardless whether the defendant has an affirmative defense. In Pacific Maritime this court expressly assumed that timely filing of an EEOC complaint is jurisdictional, but declined to rule on the timeliness until enough information could be obtained in the course of the investigation to determine whether the violation was an isolated or a "continuing" one. Id. at 1295-97. We thus held in Pacific Maritime that the timeliness issue was not yet "ripe"; we did not hold that the issue could be decided only after the EEOC initiated formal litigation. Since in this case the information which the EEOC seeks has no bearing on the preclusion question, the preclusion issue is ripe, and Pacific Maritime supports our deciding it.
 
 
 36
 Furthermore, the cases that the majority cites in support of broad agency jurisdiction over investigations are not helpful to its position. These decisions, of course, are well established and beyond question when applied in their proper context. Beginning with Justice Jackson's decision in Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), involving a Department of Labor investigation under the Walsh-Healey Act, this line of cases requires that courts enforce administrative investigations when the agency seeks information relevant to its determination, in the first instance, whether a violation of a statute within its administrative jurisdiction has occurred. See United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); see also 1 K. Davis Administrative Law Treatise Secs. 4:6, 4:15 (2d ed. 1978). This general principle has been applied to EEOC investigations. See EEOC v. Chrysler Corp., 567 F.2d 754 (8th Cir.1977); EEOC v. South Carolina National Bank, 562 F.2d 329 (4th Cir.1977). This circuit's most thorough discussion of administrative authority principles is in Judge Orrick's opinion in FMC v. Port of Seattle, 521 F.2d 431 (9th Cir.1975). In holding that the district court could not deny enforcement of an agency subpoena on the ground that the agency lacked jurisdiction of the subject matter of the investigation, Judge Orrick noted that the question was one which "we had thought settled by the Supreme Court thirty-five years ago," id., citing Endicott Johnson Corp. v. Perkins, supra.
 
 
 37
 Judge Orrick's holding in Port of Seattle, however, applies to the issue here only in contrast. As district judge in the present case, Judge Orrick attempted neither interference with the agency's authority to conduct investigations for the purpose of determining statutory coverage, nor a premature consideration of the merits of a suspected violation. The district court's holding here, that the EEOC's subpoenas should not be enforced if res judicata would bar pursuit of the claims, does not impede the agency's ability to carry out its functions. An early determination whether or not a procedural bar exists to obtaining any relief on behalf of a charging party is far from premature. Indeed, such a determination is not only perfectly sensible but also is in harmony with the reasoning of the Endicott line of cases, supra.
 
 
 38
 In addition to basing its holding on cases that in reality do not support it, the majority also decides an issue that the parties themselves did not wish to have decided. The EEOC never asked this court to hold that it has authority to investigate these claims in the event they are barred. This court, sua sponte at the en banc stage, raised the issue of the EEOC's authority to investigate claims despite a procedural bar to litigation on the merits. In their briefs en banc, both parties urged this court not to decide the case on that ground. Moreover, the majority's suggestion that the EEOC should retain investigative authority to ensure compliance with the Clayton decree is unfounded; the EEOC at all times has sought to avoid the decree, not enforce it.
 
 
 39
 The appropriate course in this case, I believe, is to decide the principal issue which the EEOC brought before this court on appeal. The EEOC argued that the Clayton consent decree should not be given preclusive effect over Title VII claims. According to its argument, all the remedies provided by Title VII are still available to the charging employees in this case because the Clayton decree is no more binding on Title VII claims than is a labor arbitration pursuant to a labor contract containing a contractual non-discrimination provision. This argument, however, was based on Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), a case which is inapplicable here. Gardner-Denver concerned the Title VII claim of an employee who had pursued arbitration remedies under a private collective bargaining agreement. The Supreme Court held that the employee was not barred from seeking relief under Title VII by having proceeded first under the private contractual scheme. In this case, in contrast, there is a judgment expressly encompassing the employees' Title VII claims--not an arbitration of employees' contractual claims. The Clayton decree is under the continuing jurisdiction of the district court and provides for resolution, not waiver, of Title VII employment discrimination claims of class members.
 
 
 40
 It is also important to stress that these employees, though not representative parties in the Clayton litigation, are members of the class described pursuant to Fed.R.Civ.P. 23(c)(3). Courts have consistently held that absent class members whose interests are adequately represented are bound by the judgment. See Dosier v. Miami Valley Broadcasting Corp., 656 F.2d 1295, 1299 (9th Cir.1981); Fowler v. Birmingham News Co., 608 F.2d 1055, 1058 (5th Cir.1979); Kemp v. Birmingham News Co., 608 F.2d 1049, 1054 (5th Cir.1979); Brown v. Vermillion, 593 F.2d 321, 322-23 (8th Cir.1979); Grigsby v. North Mississippi Medical Center, Inc., 586 F.2d 457, 461 (5th Cir.1978); Gonzales v. Cassidy, 474 F.2d 67, 74 (5th Cir.1973); Wren v. Smith, 410 F.2d 390, 391 (5th Cir.1969). See also Restatement (Second) of Judgments Sec. 41, Comment e (1982); Advisory Committee Note to 1966 amendment to Rule 23, reprinted in 39 F.R.D. 98, 105 ("the judgment in a class action maintained as such to the end will embrace the class, that is, in a class action under subdivision (b)(1) or (b)(2) those found by the court to be class members"). See generally 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1789 (1972). There has never been any claim of inadequate representation. Accordingly, the charging parties are members of the Clayton class, and res judicata principles apply to bar further consideration of their claims covered by the decree.
 
 
 41
 Significant questions may well exist about the extent to which a consent decree such as the one in this case should provide for individual access to an Article III court for resolution of Title VII claims. In this forum, however, we do not have enough information to make such a determination. The decree in this case clearly is aimed at compliance with Title VII and provides that plaintiffs may apply to the court in the event of alleged violations. We are told that one of the charging parties, after filing the charge with the EEOC, received "make whole" relief through the decree's grievance procedure and that, for at least some period, the district court appointed a master to consider claimed violations. District court contempt proceedings also have occurred. But while we know that Title VII enforcement has been active, we cannot know with certainty how the decree actually has operated because, in this collateral subpoena enforcement proceeding, the record of the Clayton litigation is not before us. In this setting we can neither evaluate its operation nor modify its provisions.
 
 
 42
 In my view the proper course for the EEOC to follow if it wishes to challenge the validity of the decree itself is to apply, pursuant to the express statutory authorization contained in 42 U.S.C. Sec. 2000e-4(g)(6), for intervention in the ongoing Clayton litigation. In that forum all concerned parties, including the employer, the EEOC and the employees can be represented and the full record made available. This procedure would accord with the principle that when a party in a later proceeding asks for relief from a judgment, such relief should be considered by means of collateral attack only where other means are unavailable. See Thaggard v. City of Jackson, 687 F.2d 66 (5th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 255, 77 L.Ed.2d --- (1983). See also Restatement (Second) of Judgments Secs. 69, 74, 78-80 (1982); 1B J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice p 0.405[4.-1] (2d ed. 1983).
 
 
 43
 Thus, since we are ill-equipped to determine the validity of the decree, in my opinion, the only correct response to the parties' arguments in this case is one that affirms the district court's ruling. I would hold that because the charging parties are members of the Clayton class, res judicata principles apply to bar further consideration of their claims covered by the decree.
 
 
 44
 The majority's failure to accord finality to this class action settlement decree creates uncertainty about the effect of all Title VII settlement agreements. This will impede the broad and creative settlement efforts which Title VII was designed to encourage.
 
 
 45
 I therefore respectfully dissent.
 
 
 
 [1]
 42 U.S.C. Sec. 2000e-5(b) provides in relevant part:
 Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof.
 
 
 [2]
 We intimate no views on the question whether the consent decree precludes an action brought by either the EEOC or the charging parties