**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant,**

**v.**

**MED–NATIONAL, INC., Defendant–Respondent.**

**No. 99–00031HG.**

United States District Court, D. Hawai'i.

May 4, 1999.

---

Daphne E. Barbee, EEOC, Honolulu, HI, for applicant.

David F.E. Banks, Cades Schutte Fleming & Wright, Honolulu, HI, for defendant-respondent.

## ORDER GRANTING EEOC'S APPLICATION FOR AN ORDER ENFORCING ADMINISTRATIVE SUBPOENA

YAMASHITA, United States Magistrate Judge.

On March 5, 1999, Applicant Equal Employment Opportunity Commission ("EEOC") filed an Application for an Order

Enforcing Administrative Subpoena. On April 1, 1999, Defendant–Respondent Med–National, Inc. ("Med–National") filed its Memorandum in Opposition to the Equal Employment Opportunity Commission's Application for an Order Enforcing Administrative Subpoena. On April 2, 1999, Med–National filed its Submission of Original Declarations in Support of Its Memorandum in Opposition to The Equal Employment Opportunity Commission's Application for an Order Enforcing Administrative Subpoena Filed April 1, 1999. This Court held a hearing on this matter on April 5, 1999. At the hearing, this Court granted the EEOC leave to file a Supplemental Memorandum. On April 8, 1998, the EEOC filed such memorandum.

In its Motion, the EEOC seeks an order enforcing a subpoena previously served by the EEOC upon Respondent Med–National on January 15, 1999. The EEOC makes its Motion pursuant to Section 7(a) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(a), Sections 9 and 11 of the Fair Labor Standards Act of 1938, 29 U.S.C. § 209 and 211, and Sections 9 and 10 of the Federal Trade Commission Act, 15 U.S.C. § 49 and § 50.

## BACKGROUND

The subject of this EEOC investigation is Med–National, Inc., a Texas corporation based in San Antonio, Texas. Med–National is a medical staffing company that recruits and provides health care personnel to United States military bases by bidding for contracts let by the United States Government. The contracts require Med–National to obtain health care providers in different fields and practices to fill the government's needs at various military bases throughout the United States.

On July 17, 1997, Dr. Frank Kajiwara, a 69 year old dentist, filed an application and letter of intent to work for Med–National as a contract dentist at Tripler Army Medical Center in Hawaii. Based on what Med–National claims was an incomplete credentials package, Med–National chose not to forward Dr. Kajiwara's application to the Army for hiring.

On December 29, 1997, Dr. Frank K. Kajiwara concurrently filed with the Hawaii State Civil Rights Commission and the EEOC discrimination charges alleging that Med–National wrongfully denied him employment because of his age in violation of Age Discrimination in Employment Act of 1967.

In order to investigate Dr. Kajiwara's charge, the EEOC served upon Med–National its Request for Information ("RFI") letter on December 30, 1997. The RFI letter required Med–National to submit information and documents regarding its hiring policies and practices for the relevant time period of December 1, 1996 to December 29, 1997. Med–National declined to turn over documents pertaining to applicants other than Mr. Kajiwara.

On April 24, 1998, the EEOC specifically requested copies of each peer and clinical questionnaire submitted on behalf of Dr. Kajiwara, and complete application packets of three individuals. Med–National again declined to comply.[1]

On January 8, 1999, the EEOC issued a subpoena requiring Med–National to submit all peer and clinical questionnaires provided to Med–National during the application process for the following eight individuals: Terry Codington; Kimberlee Feuqay; Nora K. Harmsen; Lester Robbins Henderson; Kristine Knutson; Douglas J. Kohlan; Arleen F. Regala; and Thuynga L. Vu. The subpoena was issued pursuant to the EEOC's authority under 29 U.S.C. § 626(a) of the ADEA and EEOC Procedural Regulations 26.16, 29 C.F.R. § 26.16 (1999).

On January 21, 1999, Med–National declined to produce the requested information. Med–National maintained that the information could not be disclosed, because 10 U.S.C. § 1102 as well as applicable Army regula-

---

1. It is undisputed that Med–National has produced all documentation in its possession regarding Dr. Kajiwara to the EEOC. At issue is whether Med–National must also submit the application packets of the candidates who competed against Dr. Kajiwara for the dentist position at Tripler Army Medical Hospital.

tions, A.R. 40–68, Par. 1–7i, prohibit the disclosure of any documentation generated or obtained during the application process.

On February 17, 1999, District Director of the EEOC, Susan McDufie, wrote to Med–National's counsel requesting compliance with the subpoena. She argued that 10 U.S.C. § 1102 did not apply, and, assuming it did apply, that there was an exception for disclosure of materials to governmental civil law enforcement agencies. On February 28, 1999, counsel for Med–National reiterated his refusal to comply with the EEOC administrative subpoena dated January 8, 1999. Accordingly, the EEOC filed the present Motion on March 5, 1999.

## STANDARD

■■■■■ The Ninth Circuit Court of Appeals enunciated the proper standard of judicial scrutiny in cases involving administrative agency subpoenas in *EEOC v. Children's Hospital Medical Center of Northern California,* 719 F.2d 1426 (9th Cir.1983) (en banc). In *Children's Hospital,* the court stated that: "The scope of judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow." *Id.* at 1428. The relevant questions to be addressed by the court are: "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *Id.* Once this determination is made, the court must enforce the subpoena "unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Id.* (citations omitted). An administrative subpoena thus may not be so broad so as to be in the nature of a "fishing expedition." *Peters v. United States,* 853 F.2d 692, 700 (9th Cir. 1988).

**2.** 42 U.S.C. § 2000e–5(b) provides in relevant part:

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training pro-

## DISCUSSION

There is no question and Med–National does not dispute that the EEOC has the power to issue administrative subpoenas. (Resp't Mem. in Opp. at 4). Congress not only has authorized but requires the EEOC to investigate charges of discrimination. 42 U.S.C. § 2000e–5(b).[2] To carry out its investigatory duty, the EEOC has access to "evidence of any person being investigated or proceeded against that relates to unlawful employment practices ... and is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a).

In this case, the EEOC seeks to obtain the peer and clinical questionnaires provided to Med–National during the application process for eight specific individuals who applied for the same position as Dr. Kajiwara. Such evidence is clearly relevant and material to the charges being investigated. Moreover, the method used to gather the information by the EEOC—subpoenas—is authorized by 42 U.S.C. § 2000e–9 which gives the EEOC the same investigative powers as those provided the National Labor Relations Board in 29 U.S.C. § 161.

Thus this Court has addressed the relevant questions required when asked to review an administrative subpoena: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation. *See Children's Hospital,* 719 F.2d at 1428. Having done so, this Court finds that each of these questions must be answered affirmatively.

Nevertheless, Med–National argues that this Court should deny the EEOC's application on three grounds. First, Med–National argues that the EEOC's request is "unduly burdensome." (Resp't Mem. in Opp. at 5).

grams, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof.

Second, Med–National argues that the EEOC's subpoena violates 10 U.S.C. § 1102 as well as Army regulations which require that medical quality assurance records, absent specific exception, remain classified. (Resp't Mem. in Opp. at 6). Med–National claims that 1) 10 U.S.C. § 1102 applies to shield these applications as medical quality assurance records; and 2) the EEOC's request in this instance does not fall within any of the enumerated exceptions allowed under 10 U.S.C. § 1102. (Resp't Mem. in Opp. at 6–8).

Third, Med–National argues that the EEOC already has sufficient documentation to determine that Dr. Kajiwara's claim is frivolous. In essence, Med–National asks this Court to accept that Dr. Kajiwara's application was incomplete, and that this was the legitimate non-discriminatory reason for not submitting his credentials package to the Army for hiring. Med–National then reasons that, given the apparent frivolousness of the claim, this Court should not enforce the administrative subpoena issued by the EEOC.

This Court will now address each of these arguments in turn.

### A. *"Undue Burden"*

■ Even if an agency can demonstrate that it has the authority to investigate, that it has followed the procedural requirements, and that the evidence it seeks to obtain is relevant and material to the investigation, an administrative subpoena will not be enforced if it is too indefinite, overbroad, or unduly burdensome. *See Children's Hospital,* 719 F.2d at 1428 (requiring that subpoena's properly issued to lead to relevant evidence be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome); *NLRB v. International Medication Sys.,* 640 F.2d 1110, 1114 (9th Cir.1981) (reasoning that a court will enforce an agency subpoena if, inter alia, it "is not needlessly broad"); *General Ins. Co. v. EEOC,* 491 F.2d 133, 136 (9th Cir.1974) (affirming district court's refusal to enforce agency's demand for access to evidence because it was unduly broad).

In this case, Med–National argues that this Court should consider whether the EEOC's request would unduly disrupt or seriously hinder the normal operations of business. As a United States Government Contractor, Med–National argues that it would be "in danger of losing every single contract it has with the United States Government in the event it were to produce documentation which is otherwise privileged by virtue of its involvement in the 'credentialing' process." (Resp't Mem. in Opp. at 5). Med–National claims that "[e]nforcement of the subpoena requires MNI to breach contracts with the United States Government which form the exclusive basis of its business." (Resp't Mem. in Opp. at 5). For this reason, claims Med–National, the EEOC's application should be denied.

Upon reviewing the subpoena, Med–National's Memoranda in Opposition, and the filed affidavits, this Court finds that the EEOC's subpoena is not overly broad nor unduly burdensome. This Court bases its conclusion on several grounds. First, a careful examination of the subpoena reveals that it is narrowly tailored and specific in that it requests the applications of only the eight candidates that competed directly with Dr. Kajiwara for the position at Tripler. (Appl. for Ord. Enforc. Admin. Subpoena; Exhibit 8). Given that the information the EEOC seeks is limited to those candidates that were actually competing directly against Dr. Kajiwara for the position, this Court finds that it is not overly broad.

■ Second, this Court finds that the subpoena does not impose an undue burden upon Med–National. Although Med–National claims that it would lose its government contracts if it complied with the EEOC subpoena, this claim is speculative and unsubstantiated. Med–National has not demonstrated that it would lose any government contracts if it were forced to disclose applicant information *pursuant to a court order.* This Court simply can not consider or speculate as to whether the Army may improperly deny future contracts to Med–National be-

cause Med–National is ordered to comply with an administrative subpoena.[3]

■ Contrary to Med–National's assertion, it would be bad public policy for courts to examine economic losses when considering whether an administrative subpoena creates an undue burden upon a company. If the court accepted Med–National's argument that it can not comply because to do so would violate its contract with the Army and thus subject it to business losses, other companies would be encouraged to create such no-disclosure contracts in an attempt to isolate themselves from EEOC investigations. Such would clearly work against Congress' intent for the Commission to "have a broad right of access to relevant evidence." *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 191, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *see also* 42 U.S.C. § 2000e–8(a) (allowing the Commission to copy any evidence of any person being investigated that relates to unlawful employment practices covered by the Act and is relevant to the charge under investigation).

The subpoena at issue is narrowly tailored to disclose not just relevant, but essential evidence required for the EEOC to determine whether Dr. Kajiwara was indeed discriminated against because of his age. Moreover, Med–National has failed to meet its burden of demonstrating that the production of these eight applications would be unduly burdensome. As such, this Court is required to enforce the administrative subpoena. *See Children's Hospital,* 719 F.2d at 1428 (once initial standard is met, court must enforce the subpoena unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome).

B. *10 U.S.C. § 1102*

Med–National argues that 10 U.S.C. § 1102 and coinciding Army regulations prohibit the disclosure of the application materials that the EEOC seeks in its subpoena and provides severe penalties and sanctions if Med–National were to comply. (Resp't Mem. in Opp. at 5). Moreover, Med–National argues that the EEOC's request does not fall within one of the enumerated exceptions to the statute. (Resp't Mem. in Opp. at 6).

Having conducted an extensive review of the very limited case law in this area, this Court finds that whether 10 U.S.C. § 1102 applies to prohibit the EEOC from obtaining applications of candidates for a position at a U.S. Army medical facility from a private "screening" corporation is an issue of first impression. Therefore, this Court begins by analyzing the history and language of 10 U.S.C. § 1102 and then turns to examine whether it shields Med–National from disclosure in this instance.

1. *Background*

Congress enacted 10 U.S.C. § 1102 in 1986 to provide for the confidentiality of medical quality assurance records. In doing so, Congress recognized that "[m]edical quality assurance programs are the primary mechanism by which the Military Departments monitor and ensure that quality medical care is provided to Department of Defense beneficiaries." S.Rep. No. 331, 99th Cong., 2d Sess. 245, reprinted in 1986 U.S.Code Cong. & Admin.News 6413, 6440. These programs depend on peer review and Congress determined that "[t]o be effective, this type of collegial review process must operate in an environment of confidentiality in order to elicit candid appraisals and evaluations of fellow professionals." *Id.* Concerned that the then-current fear of "release of committee records ... through discovery in litigation ... [results in] beneficiaries ... receiv[ing] less than the high quality care they deserve," *Id.,* Congress enacted section 1102 to bar the discovery or use of medical quality assurance records in litigation except in limited instances.

Under 10 U.S.C. § 1102, "medical quality assurance records created by or for the Department of Defense as part of a medical quality assurance program are confidential

---

**3.** This Court further notes that not all contract terms are enforceable. Terms that are illegal or contrary to public policy may not be enforced by the courts. A contract term that prevents the EEOC from carrying out its duties as an investigatory agency may well fall into such a realm.

and privileged." Such records may not be disclosed to any person or entity, unless they fall within a specific exception.

There are two exceptions which may be relevant to a determination in this case. Under the first of these exceptions, a medical quality assurance record may be disclosed "[t]o a criminal or civil law enforcement agency or instrumentality charged under applicable law with the protection of the public health or safety, if a qualified representative of such agency makes a written request that such record or testimony be provided for a purpose authorized by law." 10 U.S.C. § 1102(c)(1)(F). Under the second of these exceptions, medical quality assurance records may be disclosed "[i]n an administrative or judicial proceeding commenced by a criminal or civil law enforcement agency or instrumentality referred to in subparagraph (F), but only with respect to the subject of such proceeding." 10 U.S.C. § 1102(c)(G).

Army Regulation 40–68 establishes policies and procedures for administering the Army Medical Department's Quality Assurance Program. The relevant section provides:

1–7 Confidentiality Statute

a. Statute. The National Defense Authorization Act for fiscal year 1987 (Public Law No. 99–661), section 1102 title 10, United States Code provides that records created by or for the Department of Defense (DOD), in a medical or dental QAP are confidential and precludes disclosure of or testimony about records or findings, recommendations, evaluations, opinions, or actions taken by the QA activity except in limited situations. These records emanating from DOD QA program activities that are produced or compiled by DOD are part of a medical QAP. The statutory privilege is designed to improve the quality of medical care by encouraging a thorough and candid medical peer review process.

2. *Application of 10 U.S.C. § 1102*

In order to determine whether to enforce the EEOC's administrative subpoena, this Court must decide whether 10 U.S.C. § 1102 is applicable to the facts of this case. To do so, this Court must establish whether:

1) the applications of the eight candidates competing against Dr. Kajiwara are indeed medical quality assurance records protected by the statute; and 2) if so, whether the EEOC's request falls within one of the enumerated exceptions to the general rule.

The statute itself provides for definitions of both "medical quality assurance program" and "medical quality assurance record." 10 U.S.C. § 1102(j)(1) provides:

The term "medical quality assurance program" means any activity carried out ... by or for the Department of Defense to assess the quality of medical care, including activities conducted by individuals, military medical or dental treatment facility committees, or other review bodies responsible for quality assurance, credentials, infection control, patient care assessment ... medical records, health resources management review and identification and prevention of medical or dental incidents and risks.

The statute goes on to define a medical quality assurance record as "the proceedings, records, minutes, and reports that emanate from and are produced or compiled by the Department of Defense as part of a medical quality assurance program." 10 U.S.C. § 1102(j)(2).

The Fifth Circuit case of *In re United States*, 864 F.2d 1153 (5th Cir.1989), has ruled on the application and breadth of 10 U.S.C. § 1102. In that case, plaintiff filed a Federal Tort Claims Act ("FTCA") medical malpractice suit, complaining of faulty care at an Army hospital. After being served with a set of interrogatories and a request for documents, the United States objected to some of the materials dealing with medical quality assurance records. The court held that the medical records were privileged under the statute and did not have to be disclosed, and that none of the exceptions to the general proscription were even arguably under the Federal Tort Claims Act. *Id.* at 1156; *see also Maynard v. United States*, 133 F.R.D. 107 (D.N.J.1990) (holding that documents classified as medical quality assurance reports were protected from disclosure by 10 U.S.C. § 1102).

However, in *Dayton Newspapers, Inc. v. Department of the Air Force*, 35 F.Supp.2d 1033 (S.D.Ohio 1998), the district court was forced to balance the interests of the Freedom of Information Act ("FOIA") against those served by 10 U.S.C. § 1102. In that case, a newspaper corporation brought a FOIA action against the United States Air Force and Department of the Army, seeking release of databases expected to contain medical malpractice information. The Defendants contended that their entire Medical Quality Assurance System ("MQAS") database was maintained as a means of establishing and verifying the credentials of its health care providers and monitoring the quality of care provided to military personnel and their dependents and should thus be protected by 10 U.S.C. § 1102. The court, however, ruled that:

> these records are *protected only to the extent that they stem from an activity designed to assess the quality of medical care and were not created or maintained outside the medical quality assurance program.* For example, a patient's medical records are not immune from disclosure on the sole grounds that the information therein was presented during meetings of a committee designed as part of a medical quality assurance program. 10 U.S.C. § 1102(h). The government's blanket claiming of this exemption is improper under the FOIA, broader than needed and most definitely contrary to the congressional intent of promoting access to official records. In short, any information which was not created or maintained solely for the MQAS database must be produced, given that the Defendants have not argued successfully that any other exemption applies.

*Id.* at 1036 (emphasis added).

In this case, Med–National argues that the eight applications of candidates who competed against Dr. Kajiwara are medical quality assurance records protected by 10 U.S.C. § 1102. In support of this position, Med–National has submitted an affidavit of Lt. Col. Philip A. Savoie in which he states that the information sought by the EEOC is "used by the Army credentials committees to assure only qualified and competent health care providers are granted clinical privileges in Army sponsored medical or dental facilities." (Resp't Ex. H, filed April 6, 1999). Lt. Col. Philip A. Savoie further declares that the requested documents were required by the Army, and are now in the possession of the Army as a result of inclusion in the peer review process. *Id.*

In addition, Med–National has submitted the affidavit of Robert S. Welborn, Jr., Chairman of the Board of Med–National. (Resp't Ex. I, filed April 6, 1999). In the affidavit, Mr. Welborn indicates that Med–National processes applications for dental positions at several locations including 27 locations for the U.S. Army. Mr. Welborn indicates that the company begins each credential package with the resume of each applicant. If the applicant meets the Army's basic requirements, the applicant is sent a set of credentialed forms to complete and return. An individual who passes this test, a physical examination, and a drug screen is offered a provider contract which indicates that the applicant is eligible to be hired if a position exists. Mr. Welborn also states that Med–National does not maintain a complete original application since it becomes the official property of the Army's permanent credential file. However, Mr. Welborn indicates that Med–National maintains employment forms, personal application information related to benefits, license renewal dates, and continuing education records for each applicant, and that the U.S. Army maintains the complete original files of each qualified applicant on hand at each dental activity. (Resp't Ex. I, filed April 6, 1999).

Despite these declarations, this Court's independent review of the subpoena indicates that the peer and clinical questionnaires (collectively "applications") sought by the EEOC are not protected by 10 U.S.C. § 1102. First, this Court finds that Lt. Col. Philip A. Savoie's declaration is irrelevant as to the issue of whether Med–National is required to disclose applications for the eight applicants in question. The applications sought by the EEOC in this subpoena were not used to facilitate a medical quality assurance pro-

gram. Rather, the applications were obtained by Med–National for the sole purpose of screening potential applicants to determine whether they were qualified candidates for a position at Tripler.[4] While the applications forwarded to the Army might have later become part of a medical quality assurance record, they were certainly not part of such a program at the time they entered Med–National's possession. Moreover, Med–National can not absolve its duty to maintain employment records under the law by crouching behind this inapplicable statute.[5]

■ The case law supports this Court's position in this regard. Unlike the records sought in the Fifth Circuit case of *In re United States*, 864 F.2d 1153, the applications sought by the EEOC were not used as part of an official medical quality assurance program. Rather, the applications were used by Med–National solely to assess potential candidates for employment.[6] Those candidates who were not selected for employment certainly were never subject to any medical quality assurance review. As the United States District Court for the Southern District of Ohio noted, these records are "protected only to the extent that they stem from an activity designed to assess the quality of medical care and were not created or maintained outside the medical quality assurance program." *Dayton Newspapers*, 35 F.Supp.2d at 1036. In this case, the employment applications were clearly created and maintained outside the medical quality assurance program. Accordingly, they are not protected from disclosure by 10 U.S.C. § 1102.

### 3. *Exceptions to 10 U.S.C. § 1102*

■ This Court has found that the applications sought by the EEOC are not medical quality assurance records protected by 10 U.S.C. § 1102. Nevertheless, this Court feels compelled to state that even if the applications were medical quality assurance records as defined in 10 U.S.C. § 1102, the exception enumerated in 10 U.S.C. § 1102(c)(1)(F) would apply in this case.

Under 10 U.S.C. § 1102(c)(1)(F), medical quality assurance records may be disclosed "to a criminal or civil law enforcement agency or instrumentality charged under applicable law with the protection of the public health or safety, if a qualified representative of such agency or instrumentality makes a written request that such record or testimony be provided for a purpose authorized by law." Med–National argues that the EEOC is not a civil law enforcement agency and that, even if it is, the records released can only be with respect to the subject of such any investigation or proceeding. (Resp't Mem. in Opp. at 6). Med–National's arguments are without merit.

Statutory language and case law clearly indicate that the EEOC is a civil law enforcement agency within the meaning of 10 U.S.C. § 1102(c)(1)(F). Pursuant to 29 U.S.C. § 626(a), Congress has mandated that: "The EEOC shall have the power to make investigations and require the keeping of records necessary or appropriate for the administration of this chapter." Moreover, the Su-

---

4. In Linda B. Botello's affidavit, she states that "[t]he initial decision to forward credential applications to the Army for their review is made by the Credentials Committee at Med–National, Inc." and that Dr. Kajiwara was not approved by Med–National Credentials Committee. (Resp't Ex. E, filed April 1, 1999). This illustrates that Med–National used the applications to screen out those candidates who did not qualify for the position at Tripler.

5. Med–National argues that it can not turn over the eight completed credentials packages, because they are no longer in its possession. This argument is unpersuasive. Med–National must comply with the EEOC's subpoena to the extent possible. Moreover, Med–National may have a duty to maintain records under the law, once an

EEOC investigation has begun. Although the issue is not squarely before this Court, by failing to keep such records, Med–National may have violated federal laws. *See* 29 C.F.R. § 1627.4 (1999). In any case, Med–National has a duty to turn over any applicant records for the eight candidates, including all peer and clinical questionnaires, that it still retains.

6. This Court notes that Med–National has not cited one case for the proposition that employment applications constitute documents for the purposes of a medical quality assurance program. A common sense analysis dictates that these records were required solely for the purposes of hiring decision and were not part of a medical quality assurance program.

preme Court has found that the EEOC has an "overriding public interest in equal employment opportunity," and that when it acts, "it acts ... to vindicate the public interest in preventing employment discrimination." *General Telephone Co. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

Moreover, under 10 U.S.C. § 1102(c)(1)(F), medical quality assurance records may be disclosed to a civil law enforcement agency or instrumentality charged under applicable law with the public health or safety, if a qualified representative makes a written request that such record be provided for purposes authorized by law. This exception is tailored to precisely fit the circumstances of this case. The EEOC made a written request to Med–National for the eight applications for a purpose provided by law. Under these circumstances, Med–National had a duty to comply with the EEOC's request.[7]

### C. *Merits of the Underlying Case*

Med–National attempts to sway this Court into denying enforcement of the subpoena by arguing that the "documentation already in the EEOC's possession demonstrates that Dr. Kajiwara's claim is frivolous." (Resp't Mem. in Opp. at 2). Specifically, Med–National claims that Dr. Kajiwara failed to provide references for three peers who could answer a questionnaire in such a fashion to demonstrate that they had a favorable impression of Dr. Kajiwara's chair side service and dental abilities. According to Med–National, Dr. Kajiwara's documentation was inadequate, and this provides a legitimate, nondiscriminatory reason for their failure to submit his credentials package to the Army for hiring. (Resp't Mem. in Opp. at 2–3).

██ Med–National's argument is without merit. The United States Supreme Court has held that:

> when a court is asked to enforce a Commission subpoena, its responsibility is to "satisfy itself that the charge is valid and that the material requested is 'relevant' to the charge .... and more generally to assess any contentions by the employer that the demand for information is too indefinite or has been made for an illegitimate purpose." It is *not then to determine "whether the charge of discrimination is 'well founded' or 'verifiable.' "*

*University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 191, 110 S.Ct. 577, 107 L.Ed.2d 571 (emphasis added) (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72, n. 26, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984)). Thus this Court can not consider whether Dr. Kajiwara's discrimination claim is meritorious in making its decision whether or not to enforce the administrative subpoena.[8]

### CONCLUSION

In accordance with the foregoing, this Court GRANTS the EEOC's Application for an Order Enforcing Administrative Subpoena. Med–National is ORDERED to comply with the Equal Employment Opportunity Commission's Subpoena No. SF–99–008 issued on January 8, 1999 and submit all peer and clinical questionnaires for the eight candidates enumerated in the Subpoena by May 19, 1999.

IT IS SO ORDERED.

---

7. Contrary to Med–National's assertion, the EEOC does not have to rely up 10 U.S.C. § 1102(c)(1)(G) in this case. Under subparagraph G, a civil law enforcement agency is entitled to medical quality assurance records in an administrative or judicial proceeding commenced by the agency, but only with respect to the subject of such proceeding. The EEOC may rely up 10 U.S.C. § 1102(c)(1)(F) which allows disclosure upon written request.

8. This Court notes that Med–National's argument that the underlying case lacks merit and should not be further investigated only bolsters the EEOC's contention that it is indeed a civil law enforcement agency excluded under 10 U.S.C. § 1102(c)(1)(F). No action has been filed against Med–National. Rather, the EEOC merely seeks to investigate whether Med–National violated ADA laws by obtaining the applicant records which could demonstrate whether Med–National engaged in a pattern of discriminatory hiring practices.