Sid CASEY et al., Plaintiffs-Appellants,

v.

**FEDERAL TRADE COMMISSION,**
Defendant-Appellee.

**FEDERAL TRADE COMMISSION,**
Plaintiff-Appellee,

v.

Sid CASEY et al., Defendants-Appellants.

Nos. 77–2697, 77–3155.

United States Court of Appeals,
Ninth Circuit.

June 12, 1978.

Rehearing Denied July 19, 1978.

Hugh Hafer (argued), of Hafer, Cassidy & Price, Seattle, Wash., for plaintiffs-appellants.

Mark Haase, Gen. Trade Commission, (argued), Washington, D. C., for defendant-appellee.

Before WRIGHT and CHOY, Circuit Judges, and WEIGEL, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

These consolidated cases present the issue whether the federal courts should intervene to prevent the Federal Trade Commission (FTC) from investigating appellants, union locals and their principal officers (Unions), to determine if Safeway Stores and the Unions engaged in unfair methods of competition. The Unions contend that judicial intervention is warranted because the FTC has no jurisdiction to investigate collective bargaining activities of bona fide labor unions.

In No. 77–2697 (*Casey I*), the Unions sought to enjoin the FTC investigation. The district court denied equitable relief. In No. 77–3155 (*Casey II*), the FTC petitioned the district court for enforcement of subpoenas after union officers refused to testify at FTC hearings. The court ordered the subpoenas enforced, but this court stayed enforcement pending appeal. We conclude that judicial intervention would be improper and we vacate the stay order and affirm.

BACKGROUND:

The FTC issued a resolution on October 13, 1976, directing the use of compulsory process to investigate whether Safeway Stores and other participants in labor-management negotiations affecting the grocery industry in the Pacific Northwest engaged in unfair methods of competition in violation of § 5 of the Federal Trade Commission Act (Act) [15 U.S.C. §§ 41–58].[1]

* Of the Northern District of California.

1. 15 U.S.C. § 45 (1976). The statute empowers and directs the FTC "to prevent persons, partnerships, or corporation . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."

In February 1977 the FTC served subpoenas duces tecum on the Unions directing them to produce records at a hearing in Seattle. The Unions submitted the records but did not verify their authenticity as required.

After the FTC denied a motion to quash the subpoenas, the Unions filed their complaint in *Casey I*, seeking to enjoin the investigation on the ground that the FTC has no jurisdiction to investigate bona fide labor unions. The Unions also asked the court for a declaratory judgment that § 10 of the Act is unconstitutional. The FTC moved to dismiss and the Unions moved for a preliminary injunction and for summary judgment.

The district court granted the FTC's motion to dismiss. It refused to enjoin the investigation, finding that the Unions had not shown that they would suffer irreparable injury if the subpoenas were not quashed. It also found that the FTC was not plainly operating outside the scope of its jurisdiction.

On May 6, 1977, the FTC served subpoenas ad testificandum on officers of the Unions. The first union officer to appear refused to testify on the ground that the FTC was acting outside its authority. He persisted in his refusal to testify despite the Hearing Examiner's warning that § 10 provides penalties and imprisonment for wrongful refusal to testify in response to a subpoena. The other subpoenaed union officers filed affidavits advising the FCT that they also would refuse to testify.

In *Casey II*, the FTC petitioned the district court under § 9 of the Act[2] for an order requiring the union officers to testify. The district court issued an order enforcing the subpoenas, finding that the information sought by the FTC was not plainly incompetent or irrelevant to any lawful purpose of the FTC.

2. Section 9 provides:
 "in the case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses . . . . ."
15 U.S.C. § 49 (1976).

## CASEY I

The Unions appeal from the district court's refusal to enjoin the FTC from investigating or proceeding against them. Appellate jurisdiction is properly founded on 28 U.S.C. § 1292(a)(1) (1970).

### A. *Mootness.*

As a preliminary matter, we must determine whether *Casey I* is moot. The FTC contends that, because the Unions had completed submission of documents when they filed suit, there no longer exists a case or controversy.

 The Unions did not, however, submit affidavits verifying the authenticity of the documents, as required by the subpoenas. The FTC has neither waived the verification requirement nor stipulated that the Unions have satisfactorily complied with the subpoenas duces tecum. That the documents were not verified suggest that there still exists a controversy.[3]

Moreover, the Unions did not merely request relief from the subpoenas duces tecum. They asked the court for an order permanently enjoining the FTC from investigating or proceeding against them. The possibility that we may yet afford the Unions relief by preventing further disclosure or by requiring the FTC to return records wrongfully subpoenaed vests the appeal with controversy sufficient to render the case justiciable. *See Atlantic Richfield Co. v. FTC,* 546 F.2d 646, 650 (5th Cir. 1977); *FTC v. Browning,* 140 U.S.App.D.C. 292, 293, 435 F.2d 96, 97 n.1 (1970).

3. The FTC may seek compliance with the authentication requirement of the subpoena by instituting an enforcement proceeding in federal court. *See* 15 U.S.C. § 49 (1976); 16 C.F.R. § 2.13 (1977).

4. In addition, injunctive relief is usually denied until adequate legal remedies are exhausted. *Reisman v. Caplin,* 375 U.S. 440, 443, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Judicial review of an FTC cease-and-desist order is an adequate remedy through which the Unions could have raised the alleged jurisdictional defects.

### B. *Injunctive Relief.*

The Unions seek injunctive relief on the ground that the FTC has no jurisdiction to investigate collective bargaining activities of bona fide unions. The FTC argues that judicial intervention is premature, as the Unions have failed to exhaust administrative remedies.

 Although failure to exhaust administrative remedies typically precludes judicial relief, other factors occasionally outweigh the preference for a preliminary agency determination. *California ex rel. Christensen v. FTC,* 549 F.2d 1321, 1323 (9th Cir.), *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977).

 We consider three such factors in determining whether to enjoin anticipated agency action: (1) the extent of injury from pursuing an administrative remedy; (2) the degree of doubt about agency jurisdiction; and (3) the involvement of agency expertise in the question of jurisdiction. *Id.* (*citing Lone Star Cement Corp. v. FTC,* 339 F.2d 505, 510 (9th Cir. 1974)). Applying the *Lone Star Cement* test convinces us that the district court properly refused to enjoin the FTC investigation.[4]

#### 1. *Extent of Injury.*

"Only a clear showing of irreparable injury from anticipated agency action will excuse the exhaustion of administrative remedies and permit judicial intervention in the agency process." *Christensen,* 549 F.2d at 1323. The Unions argue that the threat of criminal prosecution under section 10 of the Act constitutes irreparable injury.[5]

*See Blue Ribbon Quality Meats, Inc. v. FTC,* 560 F.2d 874, 876 (8th Cir. 1977); *Atlantic Richfield Co. v. FTC,* 546 F.2d 646, 648–49 (5th Cir. 1977).

5. The Unions contend that irreparable injury would result from an adverse administrative finding, which might subject the Unions to a collateral estoppel effect in subsequent private treble damages suits. *See Paramount Transp. Systems v. Teamsters Local 150,* 436 F.2d 1064 (9th Cir. 1971). If the FTC lacks jurisdiction, however, no party would be collaterally estopped by an FTC finding. *See id.* at 1066.

■ The Unions' argument fails, however, because there is no risk of criminal prosecution where one in good faith challenges an agency subpoena by noncompliance. *Atlantic Richfield Co. v. FTC, supra,* 546 F.2d at 648–49; *First National City Bank v. FTC,* 538 F.2d 937, 938–39 (2d Cir. 1976); *Anheuser-Busch, Inc. v. FTC,* 359 F.2d 487, 490 (8th Cir. 1966); *see Reisman v. Caplin,* 375 U.S. 440, 447, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

## 2. *FTC Jurisdiction.*

The FTC offers three jurisdictional grounds: (1) FTC power to regulate persons; (2) its power to regulate corporations; and (3) its power to subpoena witnesses pursuant to its power to investigate corporations.

■ Sections 5 and 6 of the Act empower the FTC to investigate and regulate any "person, partnership, or corporation." The Act does not define "person." [6] However, in determining the meaning of any Act of Congress, unless the context indicates otherwise, ". . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals; . . . ." 1 U.S.C. § 1 (1976). This definition is arguably broad enough to include labor unions.

■ Section 4 of the Act provides: " 'Corporation' shall be deemed to include any . . . association, incorporated or unincorporated, which is organized to carry on business for its own profit or that of its members. . . ." 15 U.S.C. § 44. It is also not inconceivable that a labor union would come within the Act's definition of corporation. *Compare FTC v. National Commission on Egg Nutrition,* 517 F.2d 485, 487–88 (7th Cir. 1975), *with Community Blood Bank v. FTC,* 405 F.2d 1011, 1015–20 (8th Cir. 1969).[7]

■ Moreover, even if labor unions are exempt from FTC regulatory power, union officials may be subject to FTC subpoena power as witnesses. Section 9 of the Act provides in relevant part:

the Commission, or its duly authorized agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any person, partnership, or corporation being investigated or proceeded against; and *the Commission shall have power to require by subpoena the attendance and testimony of witnesses* and the production of all such documentary evidence *relating to any matter under investigation . . .*

15 U.S.C. § 49 (1976) (emphasis supplied).

The § 9 subpoena power has been held to extend "not only to those who are not tar-

Even if the FTC has jurisdiction, there is some question whether the Unions would be collaterally estopped in a private suit. *See North Carolina v. Chas. Pfizer & Co.,* 537 F.2d 67, 73–74 (4th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976). Any collateral estoppel effect would apply "only to those administrative determinations that have been made in a proceeding fully complying with the standards of procedural and substantive due process that attend a valid judgment by a court." *Paramount Transp. Systems,* 436 F.2d at 1066. An adverse determination made under such circumstances would give the Unions no cause to complain.

6. Labor unions are "persons," under § 8 of the Sherman Act [15 U.S.C. § 7 (1976)], and § 1 of the Clayton Act [15 U.S.C. § 12 (1976)].

7. The Unions enjoy no specific statutory right to be exempt from the Act, as do some banks and common carriers. *See* 45 U.S.C.

§§ 45(a)(2) & 46(a). Exemptions from the antitrust statutes are rarely implied. *United States v. Philadelphia National Bank,* 374 U.S. 321, 348, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963); *Silver v. New York Stock Exchange,* 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

Unions are subject to the Sherman Act, for example, when they conspire to restrain competition. *See Local 189, Amalgamated Meat Cutters v. Jewel Tea Co.,* 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965); *UMW v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Allen Bradley Co. v. Local 3, IBEW,* 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945); *California Dump Truck Owners Ass'n v. Associated General Contractors,* 562 F.2d 607 (9th Cir. 1977). The FTC has broad power to declare unlawful trade practices that conflict with the Sherman Act. *FTC v. Brown Shoe Co.,* 384 U.S. 316, 320–21, 86 S.Ct. 1501, 16 L.Ed.2d 587 (1966).

gets of an investigation, but also to those who, because of an exemption . . ., can never be targets." *FTC v. Rockefeller*, 441 F.Supp. 234, 240 (S.D.N.Y.1977). *Accord, FTC. v. Cockrell*, 431 F.Supp. 561, 563–64 (D.D.C.1977). *See also United States v. Marshall Durbin & Co.*, 363 F.2d 1, 5 (5th Cir. 1966); *FTC v. Harrell*, 313 F.2d 854, 856 (7th Cir. 1963); *FTC v. Tuttle*, 244 F.2d 605, 615 (2d Cir. 1957); *Freeman v. Brown Bros. Harriman & Co.*, 250 F.Supp. 32, 34 (S.D.N.Y.), *aff'd*, 357 F.2d 741 (2d Cir. 1966).

### 3. *Agency Expertise.*

Admittedly, the issue of FTC's authority to investigate labor unions may be framed strictly in legal terms. The exhaustion of remedies doctrine, however, often applies to questions of law as well as to questions of fact. *Christensen*, 549 F.2d at 1324. We are mindful that "[c]ourts should accord deference to an agency's own construction of its authorizing statute when reviewing final agency action." *Id., citing Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Although not controlling, "administrative interpretations of statutory terms are given important . . . significance." *Batterton v. Francis*, 432 U.S. 416, 424, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977).

■ We conclude that the Unions' jurisdictional attack is insubstantial. The FTC should have primary jurisdiction to consider the scope of its investigative authority. The primary jurisdiction doctrine,[8] expressing deference to administrative agencies and concern for conserving judicial resources, is particularly appropriate where,

as here, the contested issue may first be litigated through established agency procedures. *Christensen*, 549 F.2d at 1324. *See Federal Power Commission v. Louisiana Power & Light Co.*, 406 U.S. 621, 647, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); *Marine Engineers Beneficial Ass'n v. Interlake Steamship Co.*, 370 U.S. 173, 185, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962); *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1313 (9th Cir. 1977).

■ We affirm the district court's finding that the FTC is not plainly operating outside the scope of its authority.

### C. *Unconstitutionality of Section 10.*

The Unions alleged that they complied with the subpoenas duces tecum because they were threatened with criminal prosecution under § 10 of the Act.[9] They seek a declaratory order that the section violates the separation-of-powers doctrine, denies due process, and denies the right to trial by jury.

■ We do not reach the issue, however, because the mere possibility of prosecution here does not constitute a case or controversy sufficient to render the issue justiciable. *O'Shea v. Littleton*, 414 U.S. 488, 493–99, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Jensen v. National Marine Fisheries Service*, 512 F.2d 1189, 1191 (9th Cir. 1975) (*citing United Public Workers v. Mitchell*, 330 U.S. 75, 89–90, 67 S.Ct. 556, 91 L.Ed. 754 (1947)).

### CASEY II

■ The Unions appeal from the district court order enforcing the subpoenas ad testificandum. Such an order is final and

---

**8.** The doctrine of primary jurisdiction, closely akin to the exhaustion principle, relates to which tribunal, judicial or administrative, should first act. The doctrine does not strip the courts of jurisdiction to act. *FMC v. Port of Seattle*, 521 F.2d at 436 n.4. *See McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Montgomery v. Rumsfeld*, 572 F.2d 250 at 251–255 (9th Cir. 1978). *See generally* 3 K. Davis, *Administrative Law Treatise* §§ 19.09, 20.03 (1958).

**9.** "Any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry or to produce documentary evidence, if in his power to do so, in obedience to the subpoena or lawful requirement of the Commission, shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by a fine of not less than $1,000 nor more than $5,000 or by imprisonment for not more than one year, or by both such fine and imprisonment."

15 U.S.C. § 50 (1976).

appealable for purposes of 28 U.S.C. § 1291 (1970). *E. g., FTC v. Texaco, Inc.*, 180 U.S.App.D.C. 390, 555 F.2d 862, 873 n.21, *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977).

The district court's role in a subpoena enforcement proceeding is strictly limited where the subpoena is attacked for lack of agency jurisdiction. The subpoena must be enforced if the information sought is "not plainly incompetent or irrelevant to any lawful purpose" of the FTC. *Federal Maritime Commission v. Port of Seattle*, 521 F.2d 431 (9th Cir. 1975) (*quoting Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943)). *Accord, FTC v. Swanson*, 560 F.2d 1, 2 (1st Cir. 1977); *FTC v. Feldman*, 532 F.2d 1092, 1098 (7th Cir. 1976). *See United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *FTC v. Texaco, Inc., supra*, 555 F.2d at 872–73 & n.23.

The FTC offered three plausible jurisdictional grounds to justify its investigation; a conclusive showing is not necessary to justify enforcing a subpoena. *Marshall v. Able Contractors, Inc.*, 573 F.2d 1055 at 1056 (9th Cir. 1978); *FMC v. Port of Seattle, supra*, 521 F.2d at 436.

In *United States v. Morton Salt Co.*, 338 U.S. at 642–43, 70 S.Ct. at 364, the Court explained the proper role of administrative investigation:

> The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on sus-

picion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

We think the same principles govern here and require that the FTC subpoenas be enforced.

The stay order issued by this court on October 21, 1977 is vacated.

AFFIRMED.