836 F.2d 443
 26 ERC 2129, 56 USLW 2407, 18 Envtl.
L. Rep. 20,491
 In the Matter of The Petition of the Administrator, UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY, for
Subpoena Enforcement, Plaintiff-Appellee,
v.
ALYESKA PIPELINE SERVICE COMPANY; George M. Nelson, its
President, Defendants-Appellants.
 No. 86-4427.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 3, 1987.
Decided Jan. 5, 1988.
 
 Edward J. Shawaker, and John T. Stahr, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Robert Sussman, Washington, D.C., for defendants-appellants.
 Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 The United State Environmental Protection Agency (EPA) sued in federal district court for enforcement of its subpoena requiring that Alyeska Pipeline Services (Alyeska) and Alyeska's president George Nelson testify and produce documents for an EPA investigation conducted pursuant to the Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq. (TSCA). Judge Fitzgerald limited the scope of the subpoena somewhat and then ordered compliance. Alyeska failed to obtain a stay of the order pending this appeal and is currently obeying the enforcement order.
 
 
 2
 Alyeska operates a "ballast water treatment" (BWT) plant at Valdez, Alaska in connection with its operation of the Trans-Alaska pipeline. Oil tankers arrive in Valdez full of ballast water, which is pumped out and replaced with oil at the pipeline terminal. This water is subject to a physical separation process at Alyeska's treatment facility before it is released into Valdez Bay.
 
 
 3
 When the EPA issued the subpoena at issue in this case, it was also processing Alyeska's application for a renewal of its permit to operate the BWT pursuant to the Clean Water Act (CWA), 33 U.S.C. Sec. 1251 et seq. (1982). The EPA does not have the power to issue subpoenas under the CWA, but does have that power under the TSCA. Alyeska contends that the EPA improperly used the investigatory powers under the TSCA to further its CWA investigation of the BWT plant. The EPA maintains that it is conducting a separate investigation under the TSCA. In particular, the EPA is investigating reported incidents in which tankers dumped contaminated tank washings from other ships as ballast at the Valdez terminal before loading crude oil. These incidents, claim the EPA, are outside the scope of a CWA relicensing investigation because the BWT is not designed (or licensed) to handle water soluble chemical mixtures or solutions that may have been involved in the suspect dumpings.
 
 Discussion
 A. REVIEWABILITY
 
 4
 An order of a District Court enforcing an administrative subpoena is final and ripe for review. Casey v. Federal Trade Commission, 578 F.2d 793, 798-99 (9th Cir.1978) ("Casey "). Even though Alyeska has complied with EPA requests under the subpoena and enforcement order, this appeal is not moot. First, records still in the government's possession should be returned to Alyeska if they were wrongfully subpoenaed. See Casey, 578 F.2d at 796; Federal Trade Commission v. Browning, 435 F.2d 96, 97-98 (D.C.Cir.1970). Next, the EPA has served subpoenas, which are similar to the one served on Nelson, on other Alyeska employees. These subpoenas have not yet been satisfied. Because it would be difficult to fully contest the validity of each subpoena in subsequent actions because of the need for prompt response to the subpoenas, the case is "capable of repetition, yet evading review" and is therefore not moot. See Olagues v. Russoniello, 797 F.2d 1511, 1516 (9th Cir.1986).
 
 B. APPELLATE STANDARD OF REVIEW
 
 5
 Alyeska argues on appeal that the district court erroneously applied a standard of review too deferential to the EPA Administrator and merely "rubber stamped" the subpoena enforcement request. We hold that the question whether the district court correctly limited the scope of judicial inquiry in the EPA subpoena enforcement proceeding is a question of law, reviewable de novo in this court. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir). (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The application of that standard to the facts of this case is also reviewable de novo since appellate review requires consideration of legal concepts rather than an essentially factual inquiry. McConney, 728 F.2d at 1204.
 
 C. JUDICIAL REVIEW OF EPA SUBPOENA
 
 6
 An EPA subpoena is not self-enforcing. A recipient of an EPA subpoena may refrain from complying with it, without penalty, until directed otherwise by a federal court order. See SEC v. Jerry T. O'Brien Corp., 467 U.S. 735, 741, 104 S.Ct. 2720, 2724-25, 81 L.Ed.2d 615 (1984). The EPA Administrator is authorized to petition a federal district court to order compliance. 15 U.S.C. Sec. 2610(c).
 
 
 7
 In considering the subpoena in this case, the district court correctly articulated and applied the Ninth Circuit standard of judicial scrutiny. In EEOC v. Children's Hospital Medical Center of Northern Nevada, 719 F.2d 1426 (9th Cir.1983), an en banc panel of this court announced the following test to determine when a court should enforce administrative investigative subpoenas:
 
 
 8
 The scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation.
 
 
 9
 Id. at 1428 (citing Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 508-09, 63 S.Ct. 339, 342-43, 87 L.Ed. 424 (1943)). If the agency demonstrates the existence of these factors, the court should enforce the subpoena unless the party subpoenaed proves the inquiry is unreasonably overbroad or unduly burdensome. Id. (citing Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 217, 66 S.Ct. 494, 509-10, 90 L.Ed. 614 (1946)).
 
 
 10
 Each prong of the Children's Hospital test is met in this case. Although the EPA has no power to subpoena sworn testimony under the CWA, it does under the TSCA. 15 U.S.C. Sec. 2610(c). Alyeska concedes that the EPA has regulatory jurisdiction to investigate its BWT plant under TSCA. [Blue at 40]. The first requirement is thus met. The district court also specifically found that procedural requisites to issuing a subpoena have been satisfied. [Memo at 13-14]. Alyeska does not contest this point on appeal.
 
 
 11
 Finally, the district court considered whether specific requests for documents in the subpoena are relevant to an investigation under the TSCA. [Memo at 14-17]. Alyeska argued below, as it does on appeal, that requests seeking information about any chemical substance or mixture, including oil spills, are outside the scope of a TSCA investigation, since that Act only regulates PCBs and "imminently hazardous" chemicals. The term "imminently hazardous chemical substance or mixture" is not limited to any particular list of chemicals. The term "imminently hazardous chemical substance or mixture" is defined to mean a substance or mixture that presents an unreasonable risk of "serious or widespread" injury to health or the environment which is likely to result before the EPA has a chance to promulgate a final rule under TSCA 2606(f), 15 U.S.C. Sec. 2606(f)(1982). Although several sections of the TSCA specifically address PCBs, the Act is designed to cover the regulation of all chemical substances. Environmental Defense Fund, Inc. v. Environmental Protection Agency, 636 F.2d 1267, 1271 (D.C.Cir.1980). The district court thus correctly sustained the EPA's argument that the documents requested are relevant to a TSCA investigation.
 
 D. IMPROPER PURPOSE
 
 12
 Although Alyeska concedes that the EPA has regulatory jurisdiction to investigate its BWT plant under the TSCA, it claims that the subpoena was issued for an improper purpose and that the district court failed to review the EPA's purpose. District courts should enforce administrative subpoenas if the evidence sought is not plainly incompetent or irrelevant to any lawful purpose of the agency. Children's Hospital, 719 F.2d at 1429 (citing Endicott Johnson Corp., 317 U.S. at 509, 63 S.Ct. at 343). But it is clear that the district court did consider this claim, as it stated that the "heart of the controversy" was Alyeska's contention that the "EPA is circumventing the law by using TSCA to attain testimony otherwise unattainable under the Clean Water Act." [Memo at 5]. The district court limited the scope of the subpoena, finding that certain requests were not relevant to any lawful purpose under the TSCA. [Memo at 14-17].
 
 
 13
 The district court considered the EPA's claim that it was investigating Alyeska's operations under TSCA and noted that the "EPA provides this court with no basis in fact for justifying their suspicion that Alyeska processes, uses or disposes of PCBs or imminently hazardous chemical substances." [Memo at 11]. The court additionally found that Alyeska's representation that "it does not dispose of chemical substances in violation of TSCA" to be uncontroverted. [Memo at 11]. Alyeska incorrectly argues that these findings require a conclusion that the subpoena was issued for an improper purpose.
 
 
 14
 An "independent regulatory administrative agency has the power to obtain the facts requisite to determining whether it has jurisdiction over the matter sought to be investigated." Federal Maritime Comm'n v. Port of Seattle, 521 F.2d 431, 434 (9th Cir.1975). An administrative agency, unlike parties relying on the judicial discovery process, need not first allege a violation of the law before it can investigate. Alyeska cites three cases [Blue at 41] for the proposition that "a district court must carefully scrutinize the agency's purported justification when the party resisting a subpoena has raised a 'substantial question' as to the propriety of the agency investigation." The three cases, EEOC v. K-Mart Corp., 694 F.2d 1055, 1066 (6th Cir.1982), EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 312-13 (7th Cir.1981), and EEOC v. South Carolina National Bank, 562 F.2d 329, 332 (4th Cir.1977), all involve enforcement of EEOC subpoenas, which in most respects should be enforced to the same degree as other administrative subpoenas. Cf. Children's Hospital, 719 F.2d at 1428 (scope of judicial inquiry for EEOC or other agency subpoena enforcement proceeding is narrow). There is, however, one important difference, however: Congress specifically limited the EEOC's subpoena power by requiring that subpoenas may be issued only in connection with an investigation of a charge and must be relevant to that charge. 42 U.S.C. Sec. 2000e-8(a). Thus, while the "investigatory powers of the EEOC should be interpreted broadly", "the subpoena cannot be so broadly stated as to constitute a 'fishing expedition.' " E.g. K-Mart, 694 F.2d at 1066. Unlike the statute in the cases cited above, 15 U.S.C. Sec. 2610(c) imposes no requirement that subpoenas issue only to investigate discrete charges of violations of the law. Rather, the EPA "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." United States v. Morton Salt Co., 338 U.S. 632, 642-43, 70 S.Ct. 357, 364, 94 L.Ed. 401. The district court judge was therefore correct in his view that "the EPA need not allege that it has a suspicion or has knowledge of any facts indicating that the law has been violated."[1] [Memo at 12].
 
 
 15
 Finally, Alyeska seeks to bolster its "improper purpose" theory with the argument that TSCA was intended by Congress only to fill in gaps left in the statutory scheme and that the EPA must resort to other statutes for investigative and regulatory authority, if possible, before utilizing the TSCA. [Blue at 25-26]. The legislative history cited by Alyeska indicates that Congress was concerned about laws administered by other regulatory agencies rather than forcing the EPA to "pigeon hole" investigations under particular statutes.[2] Congress gave the EPA Administrator the authority to decide which environmental law is appropriate to investigate individual cases:
 
 
 16
 Laws administered by the Administrator.--The Administrator shall coordinate actions taken under this chapter with actions taken under other Federal laws administered in whole or in part by the Administrator. If the Administrator determines that a risk to health or the environment associated with a chemical substance or mixture could be eliminated or reduced to a sufficient extent by actions taken under the authorities contained in such other Federal Laws, the Administrator shall use such authorities to protect against such risk unless the Administrator determines, in the Administrator's discretion, that it is in the public interest to protect against such risk by actions taken under this chapter. This subsection shall not be construed to relieve the Administrator of any requirement imposed on the Administrator by such other Federal laws.
 
 
 17
 15 U.S.C. Sec. 2608(b) (emphasis added). The statute thus requires resort to other environmental laws only if the EPA has already determined that other laws would suffice. Since the EPA doesn't even know (but is attempting to find out) what chemicals it is dealing with in this case, it is premature to require the EPA to determine which environmental laws are most appropriate to remedy the problem. The subpoena, though, is relevant to determining whether there is a problem that may be remedied under the TSCA.
 
 
 18
 E. FURTHER LIMITATIONS ON THE SCOPE OF THE SUBPOENA
 
 
 19
 The district court limited the scope of the subpoena, refusing to enforce requests for documents relevant to discharges at sea or in foreign countries and tankers that have no connection with the Valdez terminal as irrelevant to a legitimate purpose. We reject Alyeska's appeal for further limitations on the scope of the subpoena because, as we discussed supra, all remaining portions of the subpoena are relevant to lawful inquiry under a TSCA investigation.
 
 Conclusions
 
 20
 In reviewing the EPA's petition for enforcement of its subpoena, the district court applied the correct legal standard of review and properly rejected Alyeska's complaint that the EPA was using the TSCA subpoena for an improper purpose. The subpoena, as limited by the district court, contains only requests relevant to a lawful purpose under the TSCA. Accordingly, we
 
 
 21
 AFFIRM.
 
 
 
 [1]
 The record shows that the EPA did have a suspicion or knowledge of facts indicating that the law has been violated in this case. Charles Hammel notified the EPA in April, 1985, that he intended to file a citizen's suit against Alyeska for illegally discharging toxins into Valdez Bay. [Memo at 3.] Although Mr. Hammel alleged that the dumping violated the Clean Water Act and Alyeska's NPDES permit, the EPA had the authority to investigate the dumping incident under all applicable environmental laws, including the TSCA
 
 
 [2]
 S.R.Rep. No. 698, 94th Cong., 2d Sess. 23, reprinted in 1976 U.S. Code Cong. & Admin. News 4491, 4513 (1976) states:
 SECTION 9--RELATIONSHIP TO OTHER LAWS
 This section is intended to minimize overlap and duplication between this act and other Federal laws while assuring protection from environmental and health dangers.
 Subsection (a) deals with the action the Administrator is to take when he determines that a law administered by another agency could be used to prevent or sufficiently reduce an unreasonable risk to health or the environment presented by a chemical substance or mixture. In such a case the Administrator is to request that agency to (1) issue an order declaring whether or not such a risk is presented, and (2) if an order is issued declaring that an unreasonable risk is presented, to determine if the risk may be prevented or sufficiently reduced under the law administered by that agency. The agency is to respond to a request from the Administrator within 90 days and publish its findings and conclusions in the Federal Register.
 Subsection (b) directs the Administrator to use the authorities under other laws he administers to prevent or reduce risks to health or the environment presented by chemical substances or mixtures unless he determines that such risks may more appropriately be protected against under this act.
 * * *
 Subsection (d) directs the Administrator to consult and coordinate his activities under this act with the Secretary of Health, Education, and Welfare and the heads of other appropriate Federal agencies in order to achieve maximum enforcement of this act while imposing the least burden of duplicative requirements on those subject to the act. The Administrator is to report annually to the Congress on these efforts.
 * * *