**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**O'CONNELL ASSOCIATES, INC. and
John T. O'Connell, Respondents.**

No. CV 93–2742 (DRH).

United States District Court,
E.D. New York.

July 27, 1993.

---

James M. Spears, Gen. Counsel, F.T.C., Washington, DC by David C. Shonka, F.T.C., New York City by Eugene V. Lipkowitz, for petitioner.

Cravath, Swaine & Moore, New York City by Thomas D. Barr and Joanne H. Gentile, for respondents.

### MEMORANDUM AND ORDER

HURLEY, District Judge.

This enforcement proceeding is brought by the Federal Trade Commission (the "FTC") pursuant to the authority conferred by Section 20 of the Federal Trade Commission

Act, 15 U.S.C. § 57b–1 (the "Act"). The FTC seeks an order from the Court requiring the respondents, O'Connell Associates, Inc. and John T. O'Connell, to produce documents specified in two FTC-issued civil investigative demands ("CIDs").

The CIDs call for evidence relating to an investigation into whether unnamed consumer reporting agencies or others were acting in violation of Section 5 of the Act and of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* The impetus for this investigation was a complaint filed with the FTC stating that certain individuals may have improperly obtained and/or provided consumer credit reports on, among others, volunteers in Ross Perot's presidential campaign.

On July 16, 1993, the parties appeared before the Court pursuant to an Order to Show Cause. The Court heard argument on the FTC's petition and reserved decision. For the reasons that follow, the Court grants the petition and orders respondents to comply with the two CIDs.

### BACKGROUND

In the fall of 1992, the FTC staff received a complaint that respondents John T. O'Connell, a private investigator, and O'Connell Associates, Inc., a corporation engaged in the private investigations business, may have improperly received and disseminated consumer credit history information and consumer reports on several volunteers in the Perot Presidential Campaign. Using the authority granted to it by a 1990 resolution,[1] the FTC directed two CIDs for documentary materials to respondents. The CIDs required respondents to make documents available for inspection and copying by January 19, 1993.

In early January, respondents' counsel sought and received certain adjustments to the specifications set forth in the CIDs. In mid-January, respondents' new counsel, Cra-

vath Swaine & Moore, requested that the deadline for filing any petitions to limit or quash the CIDs, under Commission Rule 2.7(d), 16 C.F.R. § 2.7(d),[2] be extended to January 25, 1993. The FTC agreed.

By letter dated January 25, 1993, counsel for respondents submitted responses, objections, and some documentary material to the FTC. The objections were not in the form of a motion to limit or quash the CIDs, as provided in Rule 2.7(d). The FTC then contacted respondents' counsel in regard to various deficiencies in the document production. In response, respondents produced some additional documents.

On February 9, 1993, the FTC held an investigational hearing at which O'Connell appeared and testified that, *inter alia,* he was in possession of certain documents that were responsive to the CIDs but which he declined to produce. Following the hearing, the FTC requested further documents. Respondents provided a few additional documents and then asserted that "nothing in the record justifies further inquiries of O'Connell Associates or Mr. O'Connell." Exhibit 12 to d'Entremont Declaration. Thus, respondents had not, as of this date, provided documents in response to all of the specifications set forth in the CIDs.

By letter dated March 18, 1993, the FTC informed respondents that the CIDs were being referred to the FTC's General Counsel in preparation for enforcement in federal district court. On June 10, 1993, respondents sent the FTC an O'Connell affidavit detailing respondents' compliance with certain of the CID specifications and responding to others. Ultimately, respondents did not comply with a total of twelve specifications.

### DISCUSSION

#### I.

The FTC is authorized by law to prohibit unfair methods of competition, 15 U.S.C.

---

1. In 1990, the FTC approved a Resolution Directing Use of Compulsory Process in a Nonpublic Investigation of Unnamed Consumer Reporting Agencies (the "Resolution"), which authorized the use of compulsory process "[t]o determine whether unnamed consumer reporting agencies or others are or may be engaged in acts or

practices in violation of Section 5 [of the Act] and of the FCRA."

2. Rule 2.7(d) provides that "[a]ny petition to limit or quash any . . . civil investigative demand shall be filed with the Secretary of the Commission within twenty (20) days after service."

§ 45, and to enforce compliance with the FCRA. 15 U.S.C. § 1681, *et seq.* To effect the enforcement of these statutes, Section 6(a) of the FTC Act, 15 U.S.C. § 46(a), authorizes the FTC to gather information and to investigate "from time to time the organization, business, conduct, practices and management of any person, partnership, or corporation engaged in or whose business affects commerce." Such information gathering can be accomplished by the FTC through, *inter alia,* the issuance of CIDs. 15 U.S.C. § 57b–1.

■ CIDs are not self-enforcing. Having received a CID, a respondent may either petition the FTC for an order modifying or setting aside the demand, *see* 15 U.S.C. § 57b–1(f)(1); 16 C.F.R. § 2.7(d), or simply decline to respond. In either case, the FTC must file suit in federal court to enforce compliance with the CID. 15 U.S.C. § 57b–1(e).

## II.

Respondents argue that if they choose not to comply with a CID, they have the option of either bringing a petition to limit or quash before the FTC *or* filing an answer, with objections, and waiting for the FTC to bring an enforcement proceeding in district court. Thus, respondents' position is that they need not bring their objections to the attention of the FTC in order to preserve them for district court review. The FTC counters that respondents have no such option: in order to exhaust their administrative remedies and preserve their objections for the district court, respondents must first make a petition to limit or quash to the FTC. Having failed to do so in this case, they have not exhausted their administrative remedies. According to the FTC, this failure to exhaust results in a waiver of any substantive objections to the CIDs before this Court and requires the Court to direct compliance with the CIDs.

■ It is a well established proposition of law that an individual is required to exhaust his administrative remedies before coming to court for relief. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). It is also well settled that this exhaustion requirement applies to FTC investigatory proceedings. *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Casey v. Federal Trade Comm'n,* 578 F.2d 793 (9th Cir.1978). It follows that a respondent to a CID may not object to CID specifications by bringing an action in federal district court without first availing himself of a potential administrative remedy. *See, e.g., General Finance Corp. v. Federal Trade Comm'n,* 700 F.2d 366, 368–69 (7th Cir.1983); *XYZ Law Firm v. Federal Trade Comm'n,* 525 F.Supp. 1235, 1237 (N.D.Ga.1981).

■ The slightly more nuanced question is whether a similar exhaustion requirement is implicated in an FTC-initiated enforcement proceeding. The Court finds that it is.

For the purposes of the exhaustion analysis, the Court cannot glean a distinction between an action brought by a respondent to challenge a CID and an enforcement action. That is, without having availed himself of an administrative remedy, a respondent should no sooner be entitled to relief from a district court if he waits for the FTC to bring an action than if he himself institutes it. In either case, there was an administrative mechanism for him to utilize and he failed to do so. The fact that the result for the respondent in the former case is to lose any opportunity for administrative relief, having failed to comply with the twenty day filing deadline, does not mandate a different result.

Several cases support this analysis. For example, in *Federal Trade Comm'n v. Invention Submission Corp.,* 1991 WL 47104, *5 n. 12, 1991–1 Trade Case (CCH) ¶ 69338 at p. 65351 n. 12 (D.D.C.1991), *aff'd,* 965 F.2d 1086 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993), an FTC enforcement proceeding, the court ruled that it had no authority to rule on objections that were not raised administratively. In *Federal Trade Comm'n v. The Standard Oil Co. (Ohio),* Misc. No. 79–0116, 1979 WL 1663, *2 n. 4 (D.D.C.1979), also an enforcement proceeding, the court noted that because respondent did not present objections to the FTC, it "failed to exhaust its administrative remedies". Finally, in *Federal Trade Comm'n v. United States Borax &*

*Chemical Corp.*, Misc. No. 78–0009, 1978 WL 1316 (D.D.C.1978), the court cited to 16 C.F.R. § 2.7(b) and held that a challenge to the breadth of a subpoena "should have been advanced before the Commission rather than before this Court". *Cf. Federal Trade Comm'n v. California Dental Ass'n*, Misc. No. 78–0064, 1978 WL 1375, *1 n. 1 (D.D.C. 1978) (although court ordered Administrative Law Judge to rule on respondent's objections after enforcement proceeding was brought, in spite of lack of petition to quash, court acknowledged "the well-established requirement that challenges to administrative subpoenas must be made initially and in a timely fashion to the ALJ" and noted that its order "represents a departure from the traditional application of the doctrine of exhaustion of remedies").

### III.

Respondents have advanced several arguments in support of their position that exhaustion should not bar the consideration of their objections. The Court rejects each of them.

■ First, respondents cite the fact that 57b–1 was fashioned on the CID procedure utilized by the Department of Justice (the "DOJ") under the Antitrust Civil Process Act, 15 U.S.C. § 1311 (the "ACPA"). *See* H.R.Cong.Rep. No. 917, 96th Cong., 2d Sess. 32 (1980), *reprinted in* 1980 U.S.C.C.A.N. 1143, 1149; S.Rep. No. 500, 96th Cong., 1st Sess. 23–25 (1979), *reprinted in* 1980 U.S.C.C.A.N. 1102, 1124–26. Under the DOJ procedure, the objecting party may "leapfrog" the administrative process and complain directly to the district court during an enforcement proceeding. *See* H.R.Rep. No. 1343, 94th Cong., 2d Sess. 13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2596, 2608. Thus, respondents argue that under the Act, they are entitled to the same option.

The Court finds respondents' argument in this regard disingenuous. Although it is true that the CID procedure at issue in this case

was fashioned on that used by the DOJ, there is an explicit distinction between the two statutes. More specifically, the relevant provision of the ACPA specifically provides for filing a petition modifying or setting aside a demand in district court. 15 U.S.C. § 1314(b)(1)(A), (B). In contrast, the analogous provision in the Act, Section 57b–1(f)(1), provides that a petition to modify or set aside a demand be made directly to the FTC.[3] This distinction completely undercuts respondents' argument.

■ Respondents next cite 15 U.S.C. § 57b–1(c)(11) in support of their position. That section prescribes that an objection to a specific civil investigative demand can be interposed in lieu of an answer. According to respondents, that suggests that Congress contemplated that objections to CIDs could be asserted exclusively at the district court level, without first being brought to the attention of the FTC.

The Court disagrees. There is nothing in subsection (11) to indicate that objections to CID specifications at the district court level are to be made in lieu of a petition to quash or modify before the FTC. In fact, a better reading of the subsection, particularly when it is read in conjunction with Section 57b–1(f), which provides for petitions *to the FTC* to modify or set aside CID demands, is that the objections referred to are those made to the district court after the FTC rejects a subsection (f) petition.

■ Finally, the fact that subsection (f) says that a person "*may* file" (emphasis added) a petition with the FTC does not indicate to the Court that a respondent has a choice as to where he can make his objections. It merely offers a respondent the *option of* making administrative objections if he chooses not to comply with a CID. In fact, the Second Circuit has held that administrative exhaustion is required to raise objections in court even when a statute authorizing agency process provides that a process recipient "may" file an administrative petition to

---

3. The relevant provision of the ACPA reads: a CID recipient "may file ... a petition for an order modifying or setting aside [a CID] demand ... *in the district court of the United States.*" 15 U.S.C. § 1314(b)(1)(A) (emphasis added). The relevant provision of the Act reads: a CID recipient "may file *with the Commission* a petition for an order by the Commission modifying or setting aside the demand." 15 U.S.C. § 57b–1(f)(1) (emphasis added).

quash. *See National Labor Relations Bd. v. Cowan,* 522 F.2d 26, 28 (2d Cir.1975) (construing 29 U.S.C. § 161).

## IV.

Having found that respondents have not exhausted their administrative remedies, the next question is whether the Court should order compliance with the CIDs without considering the merits of the allegedly objectionable specifications.

■ In this case, respondents have not alleged that their objections could not have been addressed by the administrative process, that their efforts to seek administrative relief were frustrated, or that they were unaware of the existence of administrative relief.[4] *See Brown v. General Services Admin.,* 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976). Under these circumstances, and because to hold otherwise would be to make the administrative exhaustion requirement meaningless, the Court finds that it would be inappropriate to intervene and consider the objections. *Cf. Brown,* 425 U.S. at 833, 96 S.Ct. at 1968 ("exhaustion requirements and time limitations would be driven out of currency were immediate access to the courts ... permissible"); *Brown v. General Services Admin.,* 507 F.2d 1300, 1308 (2d Cir.1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (failure to exhaust administrative remedies when they were adequate to address grievance was held bar to plaintiff's claims).

## V.

■ In their surreply, respondents raise for the first time the argument that the CIDs were issued unlawfully and should therefore not be enforced by this Court. Respondents' attempted justification for the untimely nature of this argument is that they did not know the scope of investigation until they received the FTC's reply papers. More specifically, they claim that initially the FTC

indicated that the investigation was limited to an inquiry relating to the six Perot volunteers, but the reply papers suggest that the scope is broader. According to respondents, extending the inquiry beyond the six individuals makes the CIDs premised on such an investigation illegal.

Although the FTC's initial memorandum does indicate that the investigation was initiated after the FTC received a complaint about the acquisition and dissemination of credit information relating to these six people, the Court can find nothing in the FTC's original papers to the effect that its investigation was limited to them. To the contrary, the initial memorandum of law says specifically that the investigation relates to whether the Act and the FCRA "were violated by persons who may have obtained or provided consumer reports on consumers, *including* volunteers in the Perot Presidential Campaign." Memorandum at 2 (emphasis added). Such a statement certainly put the respondents on notice as to the scope of the investigation. Thus, their position about the legality of the CIDs is raised too late and without proper justification. However, even if it were timely, the Court would find it unavailing.

■ Respondents' argument relies on Section 20(c)(2) of the Act, which requires that the CID "state the nature of the conduct constituting the alleged violation which is under investigation and the provision of law applicable to such violation." According to respondents, the CIDs at issue in this litigation do not state the nature of the allegedly illegal conduct, but instead cite to a resolution giving the FTC authority to use compulsory process "[t]o determine whether unnamed consumer reporting agencies or others are or may be engaged in acts or practices in violation of Section 5 of the Federal Trade Commission Act ... and of the Fair Credit Reporting Act [FCRA]." Respondents argue that this resolution does not

---

4. In fact, although respondents now urge that their interpretation of the relevant statutes indicates that objections are appropriately made before the district court, on January 15, 1993, the last work day before petitions to quash were due under 16 C.F.R. § 2.7(d), respondents notified

the FTC by telephone that they had retained new counsel, who asked that the deadline for filing any petitions to limit or quash be extended to January 25, 1993. Accordingly, respondents were certainly aware of this procedure.

properly define the scope of the investigation for the Court.

The law is well settled that the boundaries of an FTC investigation may be drawn "quite generally", *Federal Trade Comm'n v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C.Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993), in large part because at the investigative stage of a proceeding, the FTC need only have a "*suspicion* that the law is being violated in some way." *Id.* (emphasis added). In fact, in *Invention Submission Corp.*, the D.C. Circuit upheld a CID for an investigation based on a broadly-worded resolution. *Id.* at 1088. Accordingly, the Court does not find the resolution in this case to be so broad as to make the CIDs at issue illegal. Moreover, as noted, respondents' argument in this regard is untimely.

### CONCLUSION

For the foregoing reasons, the Court grants the FTC's petition for enforcement of the CIDs against respondents. Respondents are hereby ordered to comply with the CIDs at the place designated therein within ten days of receipt of this Order or at such a later date as may be designated by the FTC.

SO ORDERED.