RESOLUTION TRUST CORPORATION, Appellee,

v.

Joseph A. FRATES, Appellant.

No. 94–5251.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1995.

Decided Aug. 11, 1995.

Frederic Dorwart, Tulsa, OK, with whom Stanley W. Legro, Washington, DC and J. Michael Medina, Tulsa, OK, were on the briefs, argued the cause for appellant.

Paul M. Laurenza, with whom John H. Korns II and Suzanne Rigby, Washington, DC were on the brief, argued the cause for appellee. James E. Topinka, San Francisco, CA, and Mark G. Pedretti, New York City, entered appearances for appellee.

Before EDWARDS, Chief Judge, and WALD and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Joseph A. Frates, a former director and officer of a failed savings and loan institution, appeals from a district court order enforcing a subpoena *duces tecum* issued by the Resolution Trust Corporation ("RTC"). He challenges the propriety of that order principally on the grounds that the subpoena improperly sought information about his personal finances for the purpose of determining his capacity to pay a judgment in the event the RTC should find him liable to the institution. Because the district court correctly found that the information sought was relevant to other purposes of the RTC's investigation and because Mr. Frates failed to make a sufficient offer of proof in support of his allegation that the RTC had acted in bad faith, we affirm the district court's order enforcing the subpoena.

I. BACKGROUND

Six years ago, Congress created the RTC as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, which it enacted in response to a nationwide epidemic of insolvencies in the savings and loan industry. *See RTC v. Thornton*, 41 F.3d 1539, 1542 (D.C.Cir.1994); *RTC v. Walde*, 18 F.3d 943, 944 (D.C.Cir.1994). The Act authorizes the Director of the Office of Thrift Supervision ("OTS") to appoint the RTC as receiver of failed savings and loan institutions ("S & Ls"). 12 U.S.C. § 1821(c)(6)(A) & (B) (1994). In that capacity, the RTC succeeds to all of the failed institution's "rights, titles, powers, and privileges...." *Id.* § 1821(d)(2)(A)(I). When acting as a receiver, the RTC may take steps to "preserve and conserve the assets and property of such institution[s]." *Id.* § 1821(d)(2)(B)(iv). To that end, Congress empowered the RTC to avoid fraudulent asset transfers, *id.* § 1821(d)(17); assert claims against an S & L's directors and officers, *id.* § 1821(k); seek a court order attaching assets, *id.* § 1821(d)(18); and issue administrative subpoenas *duces tecum, id.* §§ 1821(d)(2)(I) & 1818(n) (1994).

Mr. Frates owned all the common stock of Equivest Financial Corporation, a holding company that in turn controlled State Federal Savings and Loan Association ("State Federal"), a federal S & L with offices in Tulsa, Oklahoma. From January 1987 to October 1989, Frates served as a director of State Federal. He also served on several of its management committees.

In February 1990, the OTS placed State Federal in receivership and the RTC took over as its receiver. The RTC then initiated an investigation to determine (1) whether former officers, directors, or others who provided services to or otherwise dealt with State Federal might be liable to it; (2) whether the RTC should seek to avoid any transfers of assets; (3) whether the RTC should attach any assets; and (4) whether pursuit of any potential litigation would be cost-effective. Pursuant to that investigation, in 1991 the RTC served an administrative subpoena *duces tecum* on Mr. Frates, who objected to some of its requests and complied with others. On November 24, 1992, the RTC served a second administrative subpoena *duces tecum* on Mr. Frates, which sought a broad range of information relating to the management of State Federal and Mr. Frates' personal finances. Mr. Frates raised a number of objections to the second subpoena. In a letter dated December 8, 1992, the RTC rejected the objections and directed Mr. Frates to comply with the subpoena's requests. Six days later, it filed a petition for enforcement in the U.S. District Court for the District of Columbia.

On December 16, 1992, Judge Stanley S. Harris issued an *ex parte* order to show cause why the court should not grant the petition and, after oral argument, ordered the subpoena enforced. Mr. Frates filed a timely notice of appeal from that order; and the RTC consented to a stay pending our disposition in *RTC v. Walde,* a case concerning the RTC's use of its subpoena power in similar circumstances. Meanwhile, on or about February 16, 1992, because the statute of limitations was about to expire on certain potential claims, the RTC filed a civil action against Mr. Frates in the U.S. District Court for the Northern District of Oklahoma.

After the issuance of our decision in *Walde,* we remanded the subpoena enforcement order to Judge Harris for reconsideration in light of our holding in that case. On remand, Judge Harris once again issued an order enforcing the subpoena, *RTC v. Frates,* 860 F.Supp. 5, 6 (D.D.C.1994), and Mr. Frates again appealed. He now raises numerous challenges to the district court's order. We have carefully considered all of them but address only the two that warrant discussion.

## II. ANALYSIS

This "court's role in a proceeding to enforce an administrative subpoena is a strictly limited one." *FTC v. Texaco, Inc.,* 555 F.2d 862, 871–72 (D.C.Cir.1977) (*en banc*). We have declared that

> [a]n administrative subpoena must be enforced if the information sought is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. Moreover, we defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong. Finally, if the district court finds that the information sought by the agency is relevant, we will affirm unless that determination is clearly erroneous.

*Walde,* 18 F.3d at 946–47 (internal quotation marks and citations omitted). We have also noted that the party resisting an administrative subpoena bears the burden of showing that the information sought is irrelevant. *In*

*re Sealed Case (Administrative Subpoena),* 42 F.3d 1412, 1419 (D.C.Cir.1994).

In *Walde,* we held that the RTC had statutory authority to subpoena personal financial information reasonably relevant to (1) the potential liability of a failed S & L's officers and directors, (2) whether the RTC should seek to avoid asset transfers, and (3) whether the RTC should seek attachment of assets, *Walde,* 18 F.3d at 947. We rejected, however, the RTC's claim that it had authority to subpoena personal financial information solely to assess the "cost-effectiveness" of litigation—that is, to determine whether the targeted "individual has a sufficient net worth to warrant suing, even in the absence of any reason to believe he may be liable to the S & L." *Id.* at 948. We held that the RTC must have "at least an articulable suspicion that a former officer or director is liable to the failed institution" before it could "subpoena his personal financial information for the purpose of assessing the cost-effectiveness of prospective litigation." *Id.* at 949.

 Mr. Frates maintains that *Walde* requires the RTC to demonstrate an articulable suspicion of liability before it may subpoena an individual's personal financial information *even* for the purposes of assessing liability and determining whether to avoid asset transfers or attach assets, purposes cited by the RTC in its Order of Investigation for State Federal. This argument rests on a misunderstanding of our opinion in *Walde.* There, we held that the RTC must demonstrate an articulable suspicion only where it subpoenas personal financial information "for the *sole* purpose of determining the subpoenaed person's net worth." *Id.* at 944 (emphasis added). As we have pointed out in subsequent decisions,

> [i]n *Walde,* we required the agency to demonstrate an "articulable suspicion" of liability before we would enforce a subpoena for personal financial information to further the agency's stated purpose of determining cost-effectiveness. *See* 18 F.3d at 949. We did not, however, require any similar finding when the RTC sought the same information to determine liability or prevent asset transfers. *See id.* at 947. . . .

*In re Sealed Case,* 42 F.3d at 1416; *see also Thornton,* 41 F.3d at 1544–45. Thus Judge Harris correctly concluded that because

each category of information sought is reasonably relevant to the issues of liability, the avoidance of asset transfers, or the attachment of assets ... and thus is not sought solely for the purpose of assessing respondent's net worth, the Court need not determine whether the RTC has shown [an articulable] suspicion of liability.

*Frates,* 860 F.Supp. at 6. Accordingly, he was fully justified in ordering the enforcement of the subpoena.

Mr. Frates' brief also challenges the district court's finding that the information requested by the RTC was reasonably relevant to the issues of liability, the avoidance of asset transfers, or the attachment of assets. At oral argument, however, he withdrew his objection to the district court's relevancy finding and conceded that "the totality of the information sought is relevant to one of liability or asset transfer." Transcript of Oral Argument at 7. It appears that Mr. Frates' true objection to the subpoena is that, while the information requested was relevant to permissible purposes, it was sought solely for an impermissible one: to ascertain his net worth or, perhaps, to coerce him into settlement in the litigation pending in Oklahoma. Thus he challenges the RTC's good faith in asserting that it sought the subpoenaed documents at least in part because they were relevant to liability, the avoidance of asset transfers, or the attachment of assets. Mr. Frates insists that the district court improperly denied his request for an evidentiary hearing on his allegations of bad faith.

■ A court may inquire into such allegations if the recipient of a subpoena makes "an adequate showing that the agency is acting in bad faith or for an improper purpose, such as harassment." *United States v. Aero Mayflower Transit Co.,* 831 F.2d 1142, 1145 (D.C.Cir.1987). We have observed, however, that "[s]uch procedures are inappropriate in summary [subpoena] enforcement proceedings except in extraordinary circumstances." *FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1091 (D.C.Cir. 1992) (internal quotation marks omitted).

Indeed, in addressing a subpoena recipient's analogous request for discovery into the good faith of an agency's investigation, we have warned that "district courts must be cautious in granting such discovery rights, lest they transform subpoena enforcement proceedings into exhaustive inquisitions into the practices of the regulatory agencies." *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1388 (D.C.Cir.1980) (*en banc*).

■ We need not decide what showing is required to obtain an evidentiary hearing in order to conclude that Judge Harris did not abuse his discretion when he denied Mr. Frates' request for a hearing. The only evidence in support of Mr. Frates' allegations of bad faith consists of the following statement in a memorandum submitted by his attorney to the district court:

[T]he lead lawyer for the RTC conducting both the investigation and the Oklahoma District Court Litigation told Mr. Frates [sic] counsel ... that "the claims have been found" and "the only remaining piece of the puzzle is, is it worth going after, *that's why we want the information.*"

Respondent's Opposition to Amended Petition for Enforcement at 13 (emphasis in original). We do not believe that the alleged statement by the RTC lawyer necessarily impugned the RTC's good faith. The phrase "worth going after" is ambiguous; although it could be read to support Mr. Frates' allegation that the RTC sought the requested information solely to assess his net worth, it could also be read to mean that the RTC was still searching for further evidence of the extent of his wrongdoing or the value of the claims so that it might determine whether the evidence of liability was strong enough or the resulting damages large enough to justify filing a complaint. *Cf. Walde,* 18 F.3d at 950 (noting that filing of civil litigation did not deprive RTC of subpoena power because ongoing investigation might reveal information to underpin further charges) (citing *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC,* 5 F.3d 1508, 1518 (D.C.Cir. 1993)).

### III. Conclusion

The district court did not err when it found that the information sought by the RTC's subpoena was relevant to liability, the avoidance of asset transfers, or the attachment of assets, all purposes of investigation that the RTC could pursue without an articulable suspicion. Nor did it err when it denied Mr. Frates' request for a hearing on his allegations of bad faith. For these reasons, and because we find Mr. Frates' other objections on appeal to be meritless, the order of the district court enforcing the RTC's subpoena *duces tecum* is

*Affirmed.*