**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for American Commerce National Bank, Anaheim, California, Plaintiff–Appellee,**

v.

**Gerald J. GARNER; Joan Garner; Scott B. Garner; Craig Garner; Daniel Garner; Robin Garner Zimmett; Keith Zimmett, Esq., Ltd.; Keith Zimmett, Agent, et al., Defendants–Appellants.**

No. 96–55259.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1997.

Decided Sept. 19, 1997.

---

Craig Boyd Garner, Los Angeles, California, for defendants/appellants.

Daniel Glenn Lonergan, Counsel, Federal Deposit Insurance Corporation, Washington, D.C., for plaintiff/appellee.

Before: BROWNING, BRUNETTI, and TROTT, Circuit Judges.

BRUNETTI, Circuit Judge:

This appeal concerns the district court's summary enforcement of administrative subpoenas duces tecum. The Federal Deposit Insurance Corporation, acting as receiver for the American Commerce National Bank, subpoenaed Bank Directors, family members of the Directors, and organizations affiliated with the Directors. The FDIC petitioned for the subpoenas pursuant to an investigation of financial improprieties allegedly committed by the Bank Directors. We must determine the appropriate standards for the issuance of subpoenas duces tecum to bank directors, their family members, and affiliated businesses.

We affirm the district court's enforcement of the subpoenas duces tecum.

## I. FACTS

On April 30, 1993, the Office of the Comptroller of the Currency ("OCC") declared the American Commerce National Bank ("Bank") to be in an unsafe and unsound condition to transact business and in imminent danger of default. The OCC also appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for the Bank. In July, the FDIC issued an Order of Investigation delineating the purposes of its inquiry:

to determine whether (1) such former officers, directors, employees and others who provided services to or were otherwise associated with [the Bank] may be liable as a result of any actions or failures to act which may have affected [the Bank]; (2) pursuit of such litigation would be cost effective, considering the extent of the potential defendants' ability to pay a judgment in any such litigation; (3) the FDIC should seek to avoid a transfer of any interests or an incurrence of any obligation; (4) the FDIC should seek an attachment of assets.

Gerald Garner, his wife, Joan Garner, and Galal Gough served on the Bank's Board of Directors. In July and August of 1993, the FDIC issued subpoenas duces tecum to Gough, the Garners, their children, Scott Garner, Craig Garner, and Robyn Garner Zimmet, Gerald's brother Harvey, and Robyn's husband Keith Zimmet. The FDIC also issued subpoenas to three companies for which Gerald Garner served as president: Board of Coast Plaza Doctors Hospital, Seepeedee, Inc., and Associated Partners of Coast Plaza. The FDIC also subpoenaed the Montebello Women's Medical Group, where Galal Gough served as president.

In November, Appellants provided some corporate and individual records in response to the FDIC's request. They withheld other documents, however, arguing that the subpoenas were overbroad and violated their right to privacy. In August 1995, after nearly two years of discussion between the parties concerning the remaining documents, the FDIC filed a Petition for Summary Enforcement of Administrative Subpoenas Duces Tecum. In support of the motion, the FDIC submitted the Declaration of Pamela Playdon, a FDIC senior attorney. The Playdon Declaration provided the factual basis and rationale for the FDIC's requests.

Playdon's Declaration detailed the FDIC's extensive review of the Bank's financial records and outlined the alleged illegal activities perpetrated by Appellants. These improprieties included: losses sustained by the Bank resulting from insider loans to "Gerald and Joan Garner, as well as the family trusts for their children Robyn, Scott, and Craig, for which Mrs. Garner served as Trustee"; and checking overdrafts covered by the Bank involving the Garners and entities they controlled "which may have been used to funnel money for the personal benefit of institution insiders." Estimated losses to the Bank exceeded five million dollars. According to the Declaration, the Bank executed many of these illegal transactions after federal regulators and the OCC informed the

Bank Directors that their lending practices were unsafe and unsound, thereby resulting in "unnecessary risk of loss to the institution in violation of federal regulations." The Declaration stated that

[f]rom the information presently available it appears that the directors, including Galal Gough, Gerald Garner, and Joan Garner, may have been grossly negligent, may have violated their fiduciary duties of loyalty and due care in making, approving, ratifying, or initiating certain loans, and may have engaged in flagrant self-dealing.

Finally, the Declaration provided the rationale for the subpoena requests. The FDIC subpoenaed the business entities

to determine whether or not any of the officers, directors or other borrowers of the institution had an undisclosed ownership interest in one or more of these entities, obtained loans by fraudulent practices, or transferred assets under circumstances in which the FDIC should seek to attach any assets of the individuals; and whether litigation by the FDIC against those having an (indirect or direct) ownership interest in the borrower entities would be cost-effective.

The FDIC subpoenaed the Bank Directors and their family members

to determine whether or not these individuals benefitted directly or indirectly at the expense of the institution; whether any of them transferred assets under circumstances in which the FDIC should seek to attach any of their assets; and whether litigation against any of these individuals would be cost-effective.

After Appellants opposed the FDIC's petition, a magistrate judge ordered summary enforcement of the subpoenas. The magistrate judge ruled that the subpoenas were not indefinite and were relevant to the investigation. Appellants filed an objection to the order in district court. In January 1996, the district court adopted the magistrate's order and granted the FDIC's motion for summary enforcement. The court also denied Appellants' motion to quash. The Garners timely appealed.

Appellants subsequently sought a stay of the order granting summary enforcement, arguing that irreparable harm would occur if the court enforced the subpoenas. In March 1996, the district court denied the motion to stay enforcement, expressly distinguishing this case from Appellants' principal case, *In re McVane*, 44 F.3d 1127 (2d Cir.1995).

## II. DISCUSSION

### A. Standard of Review and Mootness

■■■ The Ninth Circuit reviews de novo a district court's decision regarding enforcement of an agency subpoena. *See. Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 443 (9th Cir.1994); *EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 446 (9th Cir.1988). Although the district court refused to grant a stay and Appellants have now produced all of the requested documents, this appeal is not moot because our decision affects numerous collateral circumstances. *See Mont. Sulphur*, 32 F.3d at 443–44 n. 4; *see also Alyeska Pipeline*, 836 F.2d at 445 (holding that appeal from issuance of subpoena was not moot because reversal would result in return of documents).

### B. Standard for Enforcement of Administrative Subpoena

The Supreme Court set forth the standard for judicial enforcement of administrative subpoenas in *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). The Court stated that an agency's investigation is lawful if "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Id.* at 652, 70 S.Ct. at 368; *see also United States v. Stuart*, 489 U.S. 353, 360, 109 S.Ct. 1183, 1188, 103 L.Ed.2d 388 (1989).

■■■ The Ninth Circuit has stated that "[t]he scope of our inquiry in an agency subpoena is narrow." *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir.1996); *see also EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir.1983) (en banc). Generally, a court must ask "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *Children's*

*Hosp.,* 719 F.2d at 1428. An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met. *See Stuart,* 489 U.S. at 360, 109 S.Ct. at 1188. Finally, "[i]f the agency establishes these factors, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Children's Hosp.,* 719 F.2d at 1428.

The statute authorizing the FDIC to issue subpoenas contains few restrictions. It states:

> The corporation may, as conservator, receiver, or exclusive manager and for purposes of carrying out any power, authority, or duty with respect to an insured depository institution (including determining any claim against the institution and determining and realizing upon any asset of any person in the course of collecting money due the institution), exercise any power established under section 1818(n) of this title....

12 U.S.C. § 1821(d)(2)(I)(i). 12 U.S.C. § 1818(n) authorizes the FDIC to "issue, revoke, quash, or modify subpoenas and subpoenas duces tecum."

Although we have not addressed the standards for issuance of FDIC subpoenas to bank directors and their family members, the primary issue in this case, the Second Circuit has examined this matter in detail. *See In re McVane,* 44 F.3d 1127 (2d Cir.1995). There, the FDIC, acting as receiver for a failed bank, issued subpoenas to five bank directors based on allegations of insider dealing. In the declaration supporting the subpoena request, the FDIC alleged that an uncharged former director had transferred money to his spouse and a family trust. The FDIC's subpoena included requests for financial information from "any member of [the directors'] immediate family." *Id.* at 1131–32.

While the court enforced the subpoena request as applied to the bank's directors, it concluded that "administrative subpoenas which seek personal records from family members of the targets of an investigation into corporate wrongdoing must face more

exacting scrutiny than subpoenas seeking records from the targets themselves." *Id.* at 1131. Consequently, the court refused to enforce the portions of the subpoenas seeking personal information from the directors' families. *Id.*

## C. Enforcement of Subpoenas Issued to Bank Directors

■ Appellants contend that the subpoenas served on Gerald Garner, Joan Garner, and Galal Gough are unlawful because the FDIC focussed on wealth, ignoring the question of the Appellants' liability. Using the *Morton Salt* framework articulated in *North Bay Plumbing,* Appellants argue only that the subpoenas fail the "relevant and material" prong of the analysis.[1]

In *McVane,* the bank directors also disputed the relevancy and materiality of the FDIC subpoenas. *McVane,* 44 F.3d at 1136. The Second Circuit accepted the rationale provided in the FDIC's Order of Investigation as it pertained to the targeted bank directors. *Id.* The court stated, "[w]e defer to the agency's appraisal of relevancy which must be accepted so long as it is not obviously wrong." *Id.* at 1135 (quotations omitted).

The Second Circuit, however, set a higher standard for subpoena sections issued solely for the basis of determining cost-effectiveness in an action against bank directors. The panel held that "before it may subpoena the personal financial information of a potential target for the purpose of determining that individual's net worth, the FDIC must articulate specific grounds for its suspicion of liability." *Id.* at 1140; *see also In re Gimbel,* 77 F.3d 593, 602–03 (2d. Cir.1996) (reaffirming *McVane's* holding), *cert denied,* —— U.S. ——, 117 S.Ct. 62, 136 L.Ed.2d 24 (1996); *RTC v. Walde,* 18 F.3d 943, 949 (D.C.Cir. 1994). The court determined that the FDIC aimed six of the subpoena's twenty-five sections solely at discovery of the director's assets. Although the *McVane* court applied the higher standard to those six sections, it held that the FDIC's assertions of liability provided by the attached declaration justified issuance of the subpoenas. *McVane,* 44 F.3d

---

1. The Appellants neither challenge the FDIC's authority to issue the subpoenas nor allege that it

failed to follow the correct procedures in issuing the subpoenas.

at 1140. In doing so, the panel gave "due weight ... to the specific reasonable inferences that the [FDIC] might draw from the information available to it in light of its experience investigating other failed institutions." *Id.* (quoting *Walde,* 18 F.3d at 949). The Second Circuit concluded that once the FDIC has made the requisite showing of potential liability, it may direct some of its investigation to the cost-effectiveness of maintaining an action against the bank directors. *Id.* at 1140.

Here, as in *McVane,* the FDIC's Order of Investigation lists cost-effectiveness of the inquiry as one of several investigative goals. The Playdon Declaration supports the FDIC's assertions of liability and satisfies the more exacting specific-grounds standard articulated in *McVane.* For example, the Declaration avers that "[i]nsider loans and overdrafts may have resulted in more than five million dollars in losses to [the Bank]" and that these losses occurred after the Bank received notice of its unsafe and unsound practices. Further, the Declaration expressly implicates the targeted directors in this malfeasance. As in *McVane,* the Declaration categorically details the FDIC's basis for suspicion of liability. *See McVane,* 44 F.3d at 1140. Under the specific-grounds standard, this expression of potential liability justifies any inquiries aimed solely at cost-effectiveness.

■ Aside from their challenge to the cost-effectiveness aspects of the inquiry, which we reject, Appellants fail to articulate any other arguments concerning the relevancy of the subpoenas issued to the Directors. Once the FDIC has established relevancy, the party opposing the subpoena bears the burden of demonstrating that the subpoena is unreasonable. *See McVane,* 44 F.3d at 1135; *In re Sealed Case,* 42 F.3d 1412, 1416 (D.C.Cir.1994). Because the Playdon Declaration establishes relevancy and Appellants have failed to present any evidence to the contrary, we affirm the enforcement of the subpoenas issued to the Bank's Directors.

### D. Enforcement of Subpoenas Issued to Relatives of the Bank's Directors

■ Appellants also contend that "[t]he FDIC is attempting to enforce overly broad subpoenas in violation of the right to privacy of Appellants Scott B. Garner, Robyn Garner Zimmet, Craig Garner, Keith Zimmet and Harvey Garner." To support this argument, Appellants cite *McVane's* holding that:

administrative subpoenas issued pursuant to an agency investigation into corporate wrongdoing, which seek personal records of persons who are not themselves targets of the investigation and whose connection to the investigation consists only of their family ties to corporate participants, must face more exacting scrutiny than similar subpoenas seeking records solely from corporate participants.

44 F.3d at 1138. The Second Circuit employed an "intermediate level" of scrutiny analysis for subpoena requests from individuals not targeted by an investigation. It required "the agency to make some showing of need for the material beyond its mere relevance to a proper investigation." *Id.* (quotations omitted).

Applying that standard to the facts in *McVane,* the court concluded that the FDIC had failed to substantiate its need for the materials subpoenaed from family members. *Id.* In rebuking the FDIC, the court cited to several deficiencies in the FDIC's declaration: the lack of specific assertions of improper familial transfers by the subpoenaed directors, the failure to state why its goals could not be accomplished through more narrowly drawn subpoenas, and the "sweeping and vague" demand for documents from "any member of [the Directors'] immediate family." *Id.* at 1139. Accordingly, the court vacated the portions of the subpoena which sought records from family members. *Id.*

Appellants in this case argue that the facts here mirror those in *McVane.* Because the FDIC has not targeted any of the subpoenaed relatives, Appellants urge us to vacate the subpoenas issued to those family members. Although we accept *McVane's* legal standard for subpoenas directed to family members or other non-targets, the subpoenas issued in this case are distinguishable from those in *McVane.*

First, the Playdon Declaration avers that wrongdoing by the subpoenaed Directors directly involves the subpoenaed relatives. In *McVane,* the FDIC did not allege improper

familial transfers by the subpoenaed directors, instead relying on information that "at least one other former director . . . transferred millions of dollars worth of real estate to his spouse and an irrevocable family trust." Although not stated explicitly in the court's opinion, it appears that the FDIC subpoenaed the family members' financial information based on nothing more than speculation that the subpoenaed directors could have dissipated assets to their relatives.

Here, the FDIC has alleged familial dissipation by the same directors who are subject to the subpoenas. In discussing family involvement, the Declaration alleges that the Bank sustained losses "resulting from loans to insiders, including Gerald and Joan Garner, as well as the family trusts for their children, Robyn, Scott, and Craig, for which Mrs. Garner served as Trustee." The Playdon Declaration also identifies loan overdrafts which were covered by the Bank for the benefit of Bank insiders and the entities they controlled; it further alleges that the overdrafts "may have been used to funnel money for the personal benefit of institution insiders."

■■■ In addition, the Playdon Declaration alleges that money may have been transferred to the subpoenaed family members' trusts. In *McVane*, the FDIC broad subpoena requested documents from "any member of your immediate family." Here, it has targeted specific individuals who are implicated by documentary evidence; thus, the FDIC has alleviated the sweeping request problem of *McVane*. We stress that this factor alone would be insufficient to meet the higher standard for subpoenas issued to non-targets. When combined with the highly specific allegations of malfeasance by the targeted Directors, however, the subpoenas satisfy the "intermediate standard" of scrutiny set forth by *McVane*.

■■■ In sum, the FDIC has shown a need for the requested documents beyond a "mere relevance" to the investigation. By providing an explicit link between the Directors'

alleged financial improprieties and their relatives' financial holdings, the FDIC has satisfied *McVane*'s intermediate scrutiny standard. We adopt *McVane*'s requirement that the FDIC provide explicit allegations when delving into the finances of family members and other non-targets. Without a heightened level of specificity, subpoenas implicating non-targets will not meet the intermediate level of scrutiny. The FDIC has met the intermediate level of scrutiny standard in this case.

Accordingly, we affirm the enforcement of the subpoenas issued to the family members.

**E. Enforcement of Subpoenas Issued to Business Entities**

■■■ Appellants argue that the subpoenas issued to the Directors' related business entities are improper. However, Appellants present no case law or argument in support of this claim. Accordingly, we deem the argument waived. *See Seattle School Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1502 (9th Cir.1996) (holding that party waives issue when it "present[s] no explanation in support of its contention of error.").[2]

**F. The Subpoenas are Neither Overbroad Nor Unduly Burdensome**

■■■ Appellants contend that the document requests are overbroad and unduly burdensome. They complain that the subpoenas require the individuals to provide thousands of financial documents and demand over one million documents from Coast Plaza Doctors Hospital. We have held that once an agency establishes that it has properly issued a subpoena, it "should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *North Bay Plumbing*, 102 F.3d at 1007 (quoting *Children's Hosp.*, 719 F.2d at 1428). Appellants also cite to Federal Rule of Civil Procedure 45(c)(1), which prohibits a party from

---

**2.** Even if this argument were not waived, Appellants' claim is meritless. The Supreme Court has held that corporations possess much weaker privacy interests than individuals. *See Morton Salt*, 338 U.S. at 652, 70 S.Ct. at 368 (holding that corporations "can claim no equality with

individuals in the enjoyment of a right to privacy"); *McVane*, 44 F.3d at 1136. In light of our enforcement of the subpoenas issued to the Directors and their family members, it is clear that their related business entities would also fall within the legitimate purview of the subpoenas.

"imposing undue burden or expense on a person subject" to a subpoena.

 Appellants fail to demonstrate that the subpoenas are overbroad or unduly burdensome. They cite to numerous cases which reject burdensome subpoenas. "An administrative subpoena thus may not be so broad so as to be in the nature of a 'fishing expedition.'" *Peters v. United States,* 853 F.2d 692, 700 (9th Cir.1988). What Appellants fail to do is to enunciate how these subpoenas constitute a "fishing expedition," in light of the FDIC's specific and serious allegations of misconduct. Although the FDIC's requests are extensive, we cannot hold that the subpoenas are overbroad or unduly burdensome absent a showing by Appellants of additional support for this position. *See Stuart,* 489 U.S. at 360, 109 S.Ct. at 1188 (holding that the investigated party bears burden of proving that subpoena is overbroad or unduly burdensome).

### G. Evidence Already in the FDIC's Possession

 Appellants contend that the subpoenas are unenforceable because much of the information requested is already in the FDIC's possession. *See United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) (holding that agency may not subpoena documents already in its possession). Appellants, however, fail to provide specific information as to which document requests are duplicative. Accordingly, we reject this argument as well. *See Stuart,* 489 U.S. at 360, 109 S.Ct. at 1188.

### H. Appellants Provide No Evidence of Harassment

 The Appellants also complain that the FDIC issued the subpoenas for the purpose of harassment. The Appellants argue that "[a] court may inquire into such allegations [of bad faith or harassment] if the recipient of a subpoena makes an adequate showing that the agency is acting in bad faith or for an improper purpose, such as harassment." *RTC v. Frates,* 61 F.3d 962, 965 (D.C.Cir.1995) (quotations omitted). However, Appellants present no specific evidence of improper intent. In this case, as in *Frates,* the Appellants fail to make any specific allegations of bad faith or improper purpose.

*See Frates,* 61 F.3d at 965. Absent such a showing, no basis exists for refusing to enforce the subpoenas or sanctioning the FDIC, as Appellants request.

### I. Subpoena Request is Timely

 Finally, Appellants contend that the FDIC's petition to enforce the subpoenas was untimely and that this delay was prejudicial. The FDIC waited twenty-four months between issuance of the subpoenas and filing of the enforcement petitions. The FDIC counters that the Appellants failed to cooperate and ignored all requests to comply with the subpoenas.

Appellants cite primarily to *Kendrick v. Heckler,* 778 F.2d 253 (5th Cir.1985), to support their argument that the subpoenas should be vacated due to the lengthy delay. Although they concede that *Kendrick* permitted an eight-month delay because of mitigating circumstances, Appellants argue that no such circumstances are present here. *See Kendrick,* 778 F.2d at 258. Appellants, however, fail to demonstrate any prejudice or other harm caused by the delay. *See id.* (allowing discovery to continue because party "failed to indicate any prejudice or unnecessary burden which resulted from the delay.") Absent some demonstration of prejudice from Appellants, the FDIC's explanation is adequate.

### III. CONCLUSION

We affirm the district court's decision to enforce the subpoenas duces tecum against all parties.

### AFFIRMED.